126 N.J. 486 (1991)
600 A.2d 459
IN THE MATTER OF AN ORDER REQUIRING THE OFFICE OF THE PUBLIC DEFENDER TO PROVIDE ANCILLARY SERVICES FOR JANICE CANNADY.
The Supreme Court of New Jersey.
Argued September 23, 1991.
Decided December 19, 1991.
*487 Dale Jones, Assistant Public Defender, for appellant Office of the Public Defender (Wilfredo Caraballo, Public Defender, attorney).
Gloria B. Cherry, Assistant County Counsel, argued the cause for respondent County of Essex (Francis P. McQuade, Essex County Counsel, attorney).
The opinion of the Court was delivered by GARIBALDI, J.
In this appeal, as in In re Kauffman, 126 N.J. 499, 600 A.2d 465 (1991) and in State v. Arenas, 126 N.J. 504, 600 A.2d 467 (1991), also decided today, we consider whether the Public Defender Act, N.J.S.A. 2A:158A-1 to -25, requires the Office of the Public Defender (OPD) to provide ancillary services for indigent defendants whom it does not represent. We conclude that it does.

I
Defendant, Janice Cannady, was indicted for the murder of her live-in boyfriend. Members of her family thereafter retained private counsel to represent her. After several interviews with his client, defendant's counsel concluded that Cannady was suffering from Battered Women's Syndrome when she killed her boyfriend. To evaluate whether the Syndrome could constitute a defense at defendant's trial, counsel wished to retain Cissie Alfonso, who had testified before as an expert on Battered Women's Syndrome. Alfonso's fee is $3,000.00.
*488 Although Cannady's family paid her attorney's retainer, they cannot afford to pay for Alfonso's services. Cannady alleges she is indigent.
Cannady brought a motion to compel the OPD to pay for Alfonso's services. Relying on State v. Manning, 234 N.J. Super. 147, 560 A.2d 693 (App.Div.), certif. denied, 117 N.J. 657, 569 A.2d 1351 (1989), the trial court ruled that the Public Defender Act requires the OPD to pay for the necessary expert services of indigent defendants represented by private counsel retained by their families. The trial court ordered Cannady to fill out the required paperwork to establish whether she had been indigent at the time her family had retained private counsel. Consistent with Manning, the court also required private counsel to submit evidence at a hearing concerning the necessity of the defense. Under the trial court's analysis, the court must determine the necessity of the expert and the reasonableness of the expert's fee. At the hearing, the OPD did not dispute that Alfonso's testimony was necessary or that her fee was reasonable.
The trial court entered an order requiring the OPD to pay Alfonso's fee. The OPD appealed, arguing that the Public Defender Act does not require it to pay for the ancillary legal services of defendants whom it does not represent, regardless of their indigency. According to the OPD, Essex County should pay for Alfonso's services.
The Appellate Division denied the OPD's motion. We granted the OPD's motion for leave to appeal. 126 N.J. 322, 598 A.2d 882 (1991).

II

A. History of the Defense of Indigents in New Jersey
The obligation to defend indigents accused of indictable crimes has existed in New Jersey since 1795. Prior to adoption of the Public Defender Act, New Jersey furnished counsel to *489 indigent defendants by way of an assigned-counsel system. Under that system, a judge would assign attorneys in alphabetical rotation from a master list maintained in the county in which venue was to be laid in the indigent defendant's case. See State v. Rush, 46 N.J. 399, 407 n. 1, 217 A.2d 441 (1966). In certain cases, such as murder, the judge could make a special designation of counsel. Ibid. Only in murder cases would the assigned attorney receive compensation. See N.J.S.A. 2A:163-1.
In Rush, supra, 46 N.J. at 412, 217 A.2d 441, the Court decided that the time had come to relieve the New Jersey bar of the task of defending without compensation indigents accused of indictable crimes. The impetus behind the Rush decision was that the burden of assignments had vastly increased, due to both the ever-growing number of cases and the greater amount of time required for each case by virtue of new developments in the criminal law. Ibid.
The Court found that the legislation mandating that the county pay for all necessary expenses of prosecution, L. 1933, c. 19 § 1, now codified at N.J.S.A. 2A:158-7, required the county to pay attorney fees for indigent defendants. Id. at 414-15, 217 A.2d 441. The Court reasoned that costs of providing counsel for indigent defendants fell within the necessary expenses of prosecution because under Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the prosecution of an indigent defendant "would halt and inevitably fail" unless the defendant were represented by counsel. Rush, supra, 46 N.J. at 415, 217 A.2d 441.
Having found legislative authority for placing the financial burden on the county, the Court nevertheless delayed the effective date of its decision so as to provide the Legislature with the opportunity to decide how to finance legal representation for indigent defendants. Ibid. The Court noted that the Legislature could provide for indigent defendants by continuing the appointment system, by establishing a public defender, or *490 by providing a system combining the two. Ibid. The Legislature chose to create the OPD.

B. Public Defender Act's legislative history
The Act's legislative history establishes that the Legislature intended that the OPD assume the costs of providing ancillary services to all indigent defendants. When the Legislature adopted the Public Defender Act, it specifically stated that the Act was to implement the recommendations contained in the December 22, 1966 Report of the New Jersey Commission on the Defense of Indigent Persons Accused of Crime (Defense Commission Report). L. 1967, c. 43, § 24. That report concluded that "the cost of providing the service of the [Public] Defender Office should be borne entirely by the State without any provision for apportionment either of the entire cost or of any part thereof among the counties." Defense Commission Report at 2 (emphasis added). Concerned that apportionment of financial burden would mean apportionment of responsibility and control, the Defense Commission stated that quality and uniformity of service, the touchstones of the statute, would "best be accomplished through the structure of a single system for the entire State ... with as little as possible of collateral burdens such as would be involved in dealing with twenty-one separate boards of freeholders." Ibid. The Commission envisioned minimal, if any, participation by the counties in the financing of indigent defense. It reasoned that to have the State bear all costs would ensure quality control, uniformity, economy, and greater efficiency than if the counties were to share any of the costs.
In April 1967, the Legislature adopted the comprehensive, unified scheme that the Commission had recommended in its report. N.J.S.A. 2A:158A-1 to -25. Under that unitary, centralized system, the State assumed all costs for attorneys and for ancillary services. When the acting Governor signed the Public Defender Act, he noted that the State's administering and financing of the OPD was "one of the results of a determined *491 effort by the State government to do everything it possibly can to be of assistance to our counties * * *." The Public Defender's position that the counties be responsible for the costs of ancillary services for indigent defendants directly conflicts with the Governor's statement and with the Report that led to the creation and adoption of the Public Defender Act.
New Jersey's statewide, state-funded Public Defender System, N.J.S.A. 2A:158A-1 to -25, went into effect July 1, 1967. We decide the question before us today under that statutory system. Although the statute was amended in 1987, the statutory sections relevant to the issue in this case remained substantially the same after the 1987 amendments.

C. Public Defender Act's Language
A review of the Public Defender Act demonstrates that the authority to provide State funds to indigent defendants represented by private counsel exists in the Act itself.
First, section 1 of the Act states that the State's policy is to provide "for the realization of the constitutional guarantees of counsel in criminal cases for indigent defendants by means of the system and program established and authorized by this act * * *." N.J.S.A. 2A:158A-1. Thus, the Legislature chose to provide counsel for all indigent defendants through the centralized OPD system.
Additionally, section 2 of the Act specifically defines an "indigent defendant as one who is formally charged with the commission of an indictable offense and "who does not have the present financial ability to secure competent legal representation * * * and to provide all other necessary expenses of representation." (emphasis added).
Moreover, section 14 states that
[e]ligibility for the services of the Office of the Public Defender shall be determined on the basis of the need of the defendant. Need shall be measured according to

*492 a. [t]he financial ability of the defendant to engage and compensate competent private counsel; [and]
* * * * * * * *
h. [t]he ability of the defendant to provide all other necessary expenses of representation. (emphasis added).
However, the OPD points to section 5 of the Act as support for its position. That section provides that
[i]t shall be the duty of the Public Defender to provide for legal representation of any indigent defendant who is formally charged with the commission of an indictable offense.

All necessary services and facilities of representation (including investigation and other preparation) shall be provided in every case. The factors of need and real value to a defense may be weighed against the financial constraints of the Public Defender's office in determining what are the necessary services and facilities of representation. [N.J.S.A. 2A:158A-5 (emphasis added).]
The Legislature added the sentence following the underlined portion in 1987.
The OPD reads section 5 to mean that only if the OPD is representing the defendant must it provide other necessary expenses of representation. We find that that narrow reading does not conform with the language or legislative history of the Act.
New Jersey's policy is to provide counsel for all indigent defendants, not just for indigents represented by the OPD. The Act's language states that eligibility for OPD services includes not just a defendant's inability to hire private counsel but also a defendant's ability to pay for all other necessary expenses of representation. Nowhere in the Act is there a requirement that a defendant obtain legal services from the OPD before he or she may obtain ancillary services from it. The Legislature intended that a defendant's right to obtain necessary ancillary services for his or her defense depends on the defendant's indigence and not on whether the defendant is represented by outside counsel.

*493 III

Framework for Implementation
In order to maintain a unitary, centralized Public Defender System, however, the OPD must maintain as much control over services provided to defendants represented by outside counsel as it does over services it provides to its own clients. The Act itself supports that conclusion.
Section 5 of the Act gives the OPD discretionary authority to determine what services and facilities shall be provided to an indigent defendant, directing the OPD to weigh the factors of need and real value to the defense against the financial constraints inherent in the OPD's budget. N.J.S.A. 2A:158A-5. That discretion is necessary, for in the real world of public funding of state agencies, of which the OPD is one, resources are not unlimited but rather are subject to budgetary limitations. State v. Cantalupo, 187 N.J. Super. 113, 121, 453 A.2d 913 (App.Div. 1982).
In another section, the Act requires that any service contracts that the OPD enters into with persons outside its Office be under the OPD's supervision and control. N.J.S.A. 2A:158A-10. Section 10 should apply equally to the present situation in which outside counsel is applying for funds for ancillary services. The sole difference is that here the "outside" contract is only for ancillary services rather than for the entire package of legal representation. Thus, the OPD should have the right to determine what expenditures are necessary and how much money should be spent when outside counsel applies for services at the OPD's expense.
To achieve that result, we recommend that the following procedure be used when a defendant represented by outside counsel applies to the Public Defender for funds.
First, any defendant charged with an indictable offense who has been determined to be indigent under the factors listed in N.J.S.A. 2A:158A-14 may apply to the OPD for funds. Prior to *494 1987, the Act authorized the OPD to investigate indigence. N.J.S.A. 2A:158A-15. However, in 1987, the Legislature enacted N.J.S.A. 2A:158A-15.1, which vests the court, or a designated court-support office, with the responsibility of determining indigency, but permits the court, in its discretion, to ask for the assistance of the OPD in conducting the investigation. In cases in which an indigent defendant not represented by the OPD requests the OPD to pay for necessary ancillary services, the OPD must play an integral role in the indigency determination.
Once the court, with the OPD's assistance, determines that a defendant is indigent, such defendant may apply to the OPD for funds. Defendant should support that application with all pertinent discovery, and should also include a copy of the written retainer agreement. If the retainer has not been reduced to writing, counsel should certify the amount of the retainer. In certain cases, the OPD may require the applicant to set forth the defense theory, including statements made to defense counsel as well as statements made by potential defense witnesses. For example, in Cantalupo, supra, 187 N.J. Super. at 120, 453 A.2d 913, the Appellate Division properly held that the Public Defender need not pay for the costs of transporting alibi witnesses for a defendant who had not provided facts to support his purported need for the witnesses' testimony. The court emphasized that to make a showing that an expense is "necessary," a defendant certainly must do more than merely state that funds are not available. Ibid. The court noted that the defendant should have provided it with the witnesses' names and made a proffer of their anticipated testimony in order to show its essential value. Ibid.
Insufficient documentation may thus result in the OPD requesting further information or denying the request. Pursuant to N.J.S.A. 2A:158A-12 and 2A:84A-20, information supplied in support of an application shall be protected by the attorney-client privilege.
*495 If the defendant has sufficiently documented the application, the OPD should then determine whether the facts of the case warrant the need for ancillary services. To help in its determination, the OPD should ask these questions:
1. Is the service requested reasonably related to the issue in contention?
2. Is the service requested reasonably related to the applicant's method of refuting the State's proofs?
3. Is the service requested needed and of real value to the defense when weighed against the financial constraints of the OPD?
4. Is the requested service one that is generally available to defendants represented by the OPD?
The OPD should also consider whether the applicant's private attorney could have reasonably anticipated his or her client needing the requested services at the time of retainer. We recognize that the friends and families of indigent defendants have the right to engage private counsel. Of course, the State is not required to pay for counsel of the defendant's choice at public expense. In re Stockling, 160 N.J. Super. 486, 487, 390 A.2d 648 (App.Div. 1978). However, the public is not paying for counsel in this case; Cannady's family is. Cannady has simply exercised her constitutional right to choose who will represent her at her trial.
Although Cannady has not waived her right, as an indigent defendant, to have the OPD pay for other services necessary to her case, the fact that she has retained private counsel does raise other concerns. The OPD claims that the Legislature did not intend indigent defendants with outside counsel to enjoy legal services superior to those received by indigent defendants represented by the OPD. The OPD argues that if, for example, Cannady had been represented by the OPD, whose resources are limited, she might have had to give up some of the luxuries of private counsel, such as consultation time, to receive the benefit of expert testimony. By giving outside counsel the option of not paying for ancillary services, indigents like Cannady are placed in a better position than both indigents represented by the OPD and non-indigents with limited funds. That, the OPD argues, is essentially unfair and in contravention of the *496 Act's purpose of ensuring that OPD clients receive the same treatment as is provided to indigents represented by outside counsel.
The OPD's fairness argument would be more persuasive if the OPD were not urging that Essex County should pay defendant's expert. Regardless of whether the OPD or the County pays for defendant's expert, Cannady's outside counsel is relieved of the same financial restraints. Nonetheless, we find some merit in the OPD's concern that indigent defendants represented by private counsel might have an unfair advantage over those represented by the OPD. To safeguard against that result, the OPD has the right to learn the details of the private attorney's fee agreement. The OPD may deny a defendant's request if the private attorney's fees are disproportionate to the services required, taking into account all the relevant circumstances. The result of that denial may make it necessary for the attorney to reallocate a portion of his or her fee to cover the cost of some, or all, of the requested services. Any attorney who receives compensation for a defendant who is indigent or who may likely become indigent during the trial or appeal of the case should recognize that if the compensation is found by the OPD to be disproportionate under the circumstances it may become necessary for the attorney to bear the cost of some or all of the ancillary services necessary for the client's defense.
That result is supported by N.J.S.A. 2A:158A-16, which provides that when it appears that a defendant has the means to meet some part, although not all, of the costs of the services, he or she shall reimburse the OPD. That, of course, would happen in the typical case of the Public Defender paying for all of the defendant's services, including legal representation. However, that "reimbursement" provision could apply equally in a case in which the OPD contends that a defendant's private counsel has been disproportionately compensated, and therefore private counsel could be obligated to pay for some part, although not necessarily all, of the costs of ancillary services.
*497 If, in light of the foregoing factors, the OPD decides to provide services for a defendant, it is the OPD who shall determine how much money it should expend on such services. N.J.S.A. 2A:158A-14 vests that discretion in the OPD and does not require that it write a blank check for privately-represented defendants. State v. Manning, 234 N.J. Super. 147, 163 n. 8, 560 A.2d 693 (App.Div.), certif. denied, 117 N.J. 657, 569 A.2d 1351 (1989).
Moreover, legislative history provides additional evidence of the Legislature's intent to give the Public Defender the authority to determine what constitutes "necessary services and facilities of representation." See Senate Judiciary Committee, Statement to the Assembly (March 26, 1987). The Judiciary Statement declares:
The bill [the 1987 amendments] has language indicating that it is within the authority of the Public Defender to weigh the factors of need and real value to a defense against the financial constraints of the Public Defender's Office in determining what are the necessary services and facilities of representation.
In addition to the statutory language and history, to permit the OPD to make the decision regarding the necessity of the services that it will be required to finance seems fairer.
Should the OPD reject defendant's application, the reasons for doing so must be reduced to writing and a copy of that statement sent to defendant. Consistent with N.J.S.A. 2A:158A-15.1 that provides that "[a] determination to grant or deny the services of the Public Defender shall be subject to final review by the Assignment Judge or his designated judge," the OPD's decision to grant or deny its services also shall be subject to review by the trial court, or if the case has not yet been assigned to a specific trial court, to the assignment judge or his designee. The applicant may move for a protective order to ensure that any privileged information contained in the record remains confidential.

IV
The language of the Public Defender Act and its legislative history lead us to conclude that the Legislature intended a *498 unitary, centralized system through which all necessary expenses of representation of an indigent defendant would be paid by the OPD, regardless of whether that defendant is represented by the OPD. The OPD, however, must weigh the defendant's needs and real value of the requested services against the financial constraints inherent in the OPD's budget, in determining what necessary services shall be provided. Because the Legislature requires the OPD to provide such services for indigent defendants, our holding in this case does not violate the separation-of-powers doctrine.
In the present case, Cannady has been adjudicated indigent. She has also provided the court with evidence that Alfonso's testimony is necessary to her defense. The trial court, not the OPD, determined that Alfonso's services were necessary and that her fee was reasonable. That, as apparent from the procedure just set out, was not proper. The OPD decides whether services should be provided and how much of its funds should be expended.
However, at the hearing, the Public Defender did not argue that Alfonso's testimony was unnecessary or that her fee was unreasonable. Although we hold that in the future a defendant must apply for ancillary services to the OPD, we conclude that the trial court properly granted Cannady's order compelling the OPD to pay for Alfonso's services.
For affirmance  Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN  7.
Opposed  None.