900 A.2d 845

STATE OF NEW JERSEY, PLAINTIFF,
v. JAMES NOEL, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided July 15, 2005.

*Assistant Prosecutor Louis Latimer* for plaintiff.

*Assistant Public Defender Dale Jones* for defendant (*Assistant Deputy Public Defender, Cara Migliaccio,* on the brief; *Public Defender, Yvonne Smith Segars,* of record for defendant.)

DEVESA, P.J.Cr.

In this matter the Public Defender seeks to reassign the representation of the defendant to a private pool attorney without leave of the court and over the objection of the defendant.

### Procedural History:

On July 20, 2004, the Grand Jury returned an indictment charging defendant with aggravated assault upon a corrections officer. After being assigned by the Public Defender, an Assistant Deputy Public Defender entered an appearance on behalf of the defendant at the arraignment status conference held on September 17, 2004. Thereafter, the Assistant Deputy Public Defender sought extensive discovery, filed several motions and diligently represented the defendant during more than ten pretrial hearings and status conferences. On May 9, 2005, the matter was scheduled for a pretrial conference to confirm the completion of discovery and pretrial motions and to fix the trial date which had been tentatively scheduled for June 20, 2005. At the beginning of the conference, the Assistant Deputy Public Defender stated to the court that she was "pooling this case out" to a private attorney "because of a conflict." This representation was made without any prior notice to the court, without attorney certifications, and without the Defendant's consent. In response to the court's inquiries, the Assistant Deputy Public Defender stated that she could not disclose the reasons for the abrupt and unexplained reassignment since they involved privileged communications. She further stated that the private pool attorney was not present because he did not yet know that he had been assigned to represent the defendant.

Unable to assess the impact of these developments on the interests of the defendant, the court and the State, the court refused to approve a reassignment without further information

and ordered the Assistant Deputy Public Defender to comply with *R.* 1:11–2 for the substitution of counsel, or in the alternative, to file a legal memorandum citing authority for why the reassignment to a private pool attorney could be made without the consent of the defendant and the Prosecutor, or without court approval.

Despite the court's order, on May 12, 2005, the court received a letter from a secretary in the New Brunswick Office of the Public Defender stating that the matter had been reassigned to a private pool attorney on May 9, 2005. The Public Defender then submitted letter briefs asserting that *R.* 1:11–2 did not apply to Public Defender reassignments to private attorneys and that those assignments may be made without court inquiry or approval. The Prosecutor took no position on this issue. On July 15, 2005, the court conducted a hearing to resolve the representation of defendant and related issues.

The court finds that the withdrawal of the Assistant Deputy Public Defender and the assignment of a private attorney to represent the defendant without his consent, without notice to the Prosecutor, and without court approval constituted a violation of *R.* 1:11–2, and was contrary to established law. However, after hearing on the record from the Public Defender, the defendant, the private pool attorney, and the Prosecutor, the court is satisfied that because of irreconcilable differences between the defendant and the Assistant Deputy Public Defender, there is good cause for the reassignment over the defendant's objection. Accordingly, the court does grant approval for the reassignment. Since this matter raises important issues relating to the rights of the defendant and the authority of the court and the Public Defender, the court deems it necessary to fully set forth the reasons for its decision.

### *Applicable Law and Analysis:*

In letter briefs, the Office of the Public Defender asserts that:

In accordance with *N.J.S.A.* 2A:158(a)(8) the Public Defender has the responsibility to assign cases in a manner to avoid conflict and the appearance of impropriety, this includes cases which are assigned to pool attorneys. The statute clearly states

that the decision to whom to assign cases to is held by the Public Defender and **there are no provisions for this to be questioned by the court.** (Emphasis added).

Furthermore, The Office of the Public Defender contends that since the Public Defender remains the "attorney of record" in every case where the Public Defender reassigns a pool attorney to represent a defendant, there is no substitution or withdrawal that triggers the applicability of *R.* 1:11–2. In effect, the Public Defender argues that for purposes of the rule, the hundreds of Assistant Deputy Public Defenders and the hundreds of private attorneys and firms that accept Public Defender assignments constitute "one firm." Therefore the Public Defender is free to assign and reassign attorneys to represent any indigent defendant without regard to the consent of the client, the prosecutor or the court.

The authority cited by the Public Defender for this proposition is that: (1.) *N.J.S.A.* 2A:158(a)(8) vests the Public Defender with the exclusive authority to assign attorneys to indigent defendants and The Public Defender Act, *N.J.S.A.* 2A:158A, contains no language limiting the Public Defender's discretion or providing for court approval; and (2.) Since *N.J.S.A.* 2A:158(a)(10) states that the Public Defender remains responsible for the supervision of cases after reassignment to private pool attorneys, and the Court Guidelines for Captioning Appeals state that the Public Defender remains the attorney of record in designated counsel cases, the "same firm" continues to represent the defendant after reassignment. Therefore *R.*1:11–2 does not apply.

The court finds these arguments unpersuasive. When an Assistant Deputy Defender, after entering an appearance at the arraignment status conference pursuant to *R.* 3:8–3 and *R.* 3:9–1(c) withdraws from the representation of a defendant and seeks the reassignment of the matter to a private pool attorney because of an alleged conflict of interest, the rights of the defendant (and possibly co-defendants), and the interests of the Prosecutor and the public may be implicated. To allow such reassignments to take place without regard to *R.* 1:11–2 or without court approval

undermines the court's authority to protect these rights and to protect the integrity of the trial process. A fair reading of The Public Defender Act, the Court Rules and related case law makes it clear that the Public Defender does not have the unbridled discretion to reassign cases to private pool attorneys because of alleged conflicts of interest without complying with *R.* 1:11–2 or without seeking court approval.

Article VI, § 2, ¶ 3 of the New Jersey Constitution of 1947 "charges the Supreme Court with the responsibility for making rules governing the practice and procedure in and the administration of all of the courts in the State" so as to protect and preserve individuals' rights and seek fairness. *Capital Bonding Corp. v. New Jersey Supreme Court,* 127 *F.Supp.*2d 582, 586 n. 3 (D.N.J. 2001).

There is no doubt that the Court Rules and the Rules of Professional Conduct generally apply to the Public Defender. *See R.* 1:13–2, 2:7–2, 3:4–2, 3:8–2, 3:8–3, 3:22–6. In *State v. Bell,* 90 *N.J.* 163, 170, 447 *A.*2d 525 (1982), the Supreme Court held that as a general matter, "lawyers employed by legal aid societies and similar other public service offices have generally been held to the same standards as private lawyers." Indeed in *Bell,* the Court specifically held that *Rule* 3:8–2, which prohibits joint representation of defendants without Court approval, also applied to the Public Defender.

The Public Defender Act, *N.J.S.A.* 2A:158A–1 was adopted to provide for the "realization of the constitutional guarantees of counsel in criminal cases for indigent defendants." *Stroinski v. Office of the Public Defender,* 134 *N.J.Super.* 21, 27, 338 *A.*2d 202 (App.Div.1975) (*quoting N.J.S.A.* 2A:158A–1). Included in the Act are provisions that require the Public Defender, like all other attorneys, to be answer to the court as the guardian of individual rights. To begin with, the Act provides that the court and not the Public Defender makes the initial decision to authorize the Public Defender to assign counsel to indigent defendants. *N.J.S.A.* 2A:158A–15.1. The Public Defender Act also provides that:

In providing legal services to defendants pursuant to this act, the Office of the Public Defender and every attorney actually engaged in the performance of the same, whether as a member of the staff or engaged on a case basis or otherwise, shall adhere at all times to the standards and level of performance established from time to time by the Supreme Court of New Jersey in the execution of its duty to supervise the practice of law... *N.J.S.A.* 2A:158A–13.

In several cases, courts have found it necessary to define the proper role of the Public Defender in protecting the rights of accused. *State v. Rue,* 175 *N.J.* 1, 19, 811 *A.*2d 425 (2002) (holding that the Public Defender was required to advance a defendant's claim raised in the first post conviction relief proceedings); *State v. Arenas,* 126 *N.J.* 504, 507, 600 *A.*2d 467 (1991) (holding that the Public Defender had to pay the costs of trial transcripts for an indigent defendant represented by private counsel); *In re Kauffman,* 126 *N.J.* 499, 503, 600 *A.*2d 465 (1991) (holding that the Public Defender is required to pay for an expert to challenge Avenel report); *In re Cannady,* 126 *N.J.* 486, 498, 600 *A.*2d 459 (1991)(holding that Public Defender is required to provide for the cost for an expert to support battered women's syndrome defense); *State v. Cann,* 342 *N.J.Super.* 93, 105, 775 *A.*2d 733 (App.Div.), *certif. denied,* 170 *N.J.* 208, 785 *A.*2d 437 (2001) (holding the Public Defender's decision to not fund an indigent defendant's request for DNA testing is subject to court review). *State v. Manning,* 234 *N.J.Super.* 147, 160, 560 *A.*2d 693 (App. Div.), *certif. denied,* 117 *N.J.* 657, 569 *A.*2d 1351 (1989) (holding that the Public Defender must pay for services of experts for indigent defendants who are represented by private counsel); *State v. Linares,* 192 *N.J.Super.* 391, 398–99, 470 *A.*2d 39 ( Law Div.1983) (ordering that the Public Defender was to pay for interpreters for non-English speaking indigent defendants during criminal cases).

Against this backdrop, the Public Defender nevertheless argues that *R.* 1:11–2 and case law requiring court approval for withdrawal or substitution of counsel doesn't apply to staff attorneys or pool attorneys assigned by the Public Defender. This court finds such an assertion untenable.

Each time that there is a substitution of attorney for a criminal defendant because of an alleged conflict of interest, the rights and interests of the defendant (possibly co-defendants), the public and the prosecutor may be implicated. In *State v. Loyal,* 164 *N.J.* 418, 443, 753 *A.*2d 1073 (2000), the New Jersey Supreme Court recognized these interests and held that a trial court has an independent and overriding interest in ensuring that trials are conducted in a fair manner. The Court went on to state:

"The public itself has the greatest stake in the propriety of the legal relationships that are created to properly administer criminal justice" ... [and the public has an interest in a fair trial even when waived by the prosecutor and defendant.] *Id.* at 440, 753 *A.*2d 1073 quoting *Matter of Garber,* 95 *N.J.* 597, 614, 472 *A.*2d 566 (1984) (quotation omitted).

Furthermore, the Ethical Rules are also intended to further a broader societal interest, that being the integrity of the trial process itself. *See State v. Jimenez,* 175 *N.J.* 475, 485, 815 *A.*2d 976 (2003). This view was reiterated by our Supreme Court in the matter of *State ex rel. S.G.,* 175 *N.J.* 132, 140, 814 *A.*2d 612 (2003), wherein the Court stated:

In criminal matters ... special vigilance is required because an attorney's divided loyalty can undermine a defendant's Sixth Amendment right to effective assistance of counsel.. Such representation not only constitutes a breach of professional ethics and invites disrespect for the integrity of the court, but it is also detrimental to the independent interest of the trial judge to be free from future attacks over the adequacy of the waiver or the fairness of the proceedings in his own court. 175 *N.J.* 132, 140, 814 *A.*2d 612 (2003)

*Rule* 1:11–2 serves to protect these rights and interests when there is a withdrawal or substitution of attorneys. It states in pertinent part:

(2) after the entry of a plea in a criminal action ... an attorney may withdraw without leave of the court only upon the filing of the client's written consent, a substitution of attorney executed by both the withdrawing attorney and the substituted attorney, a written waiver by all other parties of notice and the right to be heard, and a certification by both the withdrawing attorney and the substituted attorney that the withdrawal and substitution will not cause or result in delay.

The rule provides an opportunity for the defendant and all parties to be heard regarding the substitution of counsel. If the defendant and all parties consent and execute the required certifications, reassignment may take place without leave of court. If

there is an objection, the moving party may seek the court's approval and the interested parties have a right to be heard. The court must then decide if there is good cause for the withdrawal or the substitution. The "decision whether to relieve counsel is committed to the sound discretion of the trial court." *In re S.G., supra,* 175 *N.J.* at 141, 814 *A.*2d 612. *Accord State v. Biegenwald,* 126 *N.J.* 1, 21, 594 *A.*2d 172 (1991).

In *State v. Johnson,* the court held that "the granting of leave by the court depends upon such considerations as proximity of the trial date and possibility for the client to obtain other representation." 274 *N.J.Super.* 137, 147, 643 *A.*2d 631 (App.Div.), *certif. denied,* 138 *N.J.* 265, 649 *A.*2d 1285 (1994) (*quoting Jacobs v. Pendel,* 98 *N.J.Super.* 252, 255, 236 *A.*2d 888 (App.Div.1967)). The court went on to say that "[t]he trial court must balance its inherent and necessary right to control its own calendar and the public's interest in the orderly administration of justice against the attorney's reasons for requesting withdrawal." *Johnson, supra,* at 147–48, 643 *A.*2d 631. Ironically, the *Johnson* court denied trial counsel's motion to withdraw (1) based on counsel's failure to provide written notice of the motion to all parties as required by *R.* 1:11–2 and (2) because, like here, the attorney "merely stated that he believed his continued representation of defendant would not provide defendant with effective assistance of counsel and he was 'not at liberty to disclose the reasons for that.'" *State v. Johnson, supra,* at 148, 643 *A.*2d 631. The Court found the reasons given were "not sufficient to warrant granting the request to withdraw at such a late stage of the proceedings." *Ibid.*

*R.* 1:11–2 has been amended numerous times since the enactment of the Public Defender Act in 1967; yet no provisions have been adopted to exclude the Public Defender's Office from its application.

Nor is there any language in the Public Defender Act to suggest that *R.* 1:11–2 does not apply to the Public Defender. While various subsections of the Act deal with the initial assignment of attorneys to indigent defendants, none expressly address the

reassignment of counsel once an assigned Assistant Deputy Public Defender wishes to withdraw because of a conflict of interest. *See, N.J.S.A.* 2A:158A–8 (lawyers to represent defendants on case basis; selection); *N.J.S.A.* 2A:158A–9 (case workload; division; employment of counsel); *N.J.S.A.* 2A:158A–10 (contracts authorizing private or public organizations to execute functions of public defender). On the other hand, *R.* 1:11–2 does expressly govern the procedure an attorney should follow when withdrawing from representing a client to whom he has already been assigned. In *State v. Muniz,* 260 *N.J.Super.* 309, 316, 616 *A.*2d 926 (App.Div. 1992), our Appellate Division recognized this distinction when it addressed the Public Defender's "initial right" to select counsel for a defendant under the provisions of *N.J.S.A.* 2A:158A–9 and 10.

No case has held that an Assistant Deputy Public Defender is statutorily exempt from having to follow *R.* 1:11–2 or from otherwise seeking court approval after entering an appearance required by *R.* 3:8–3 and then seeking to withdraw because of a conflict of interest. On the contrary, there are several court decisions that support the proposition that all attorneys, including the Public Defender, must abide by the procedures set out in *R.* 1:11–2. In *State ex rel. S.G.,* our Supreme Court held that pursuant to *R.* 1:11–2, absent the client's consent, an "attorney of record" may not withdraw from a criminal matter without leave of Court. 175 *N.J.* at 141, 814 *A.*2d 612. In *Bakari v. Beyer,* 863 *F.Supp.* 192, 197 (D.N.J.1994), *rev'd on other grounds* 82 *F.*3d 404 (3rd Cir. 1996), the Court held that when the assigned Public Defender withdrew from representing the defendant in that matter "the burden was on the Office of the Public Defender to file the motion for substitute counsel for petitioner pursuant to New Jersey Rule 1:11–2." In *Muniz, supra* at 315–16, 616 *A.*2d 926, the Appellate Division, acknowledging that public defender assignments may have an impact on the interests of the defendant, the prosecutor and the court, went on to state:

> In appropriate circumstances the issue of the defendant's desires should be fully developed at a hearing when either the prosecution, defendant or defense attorney raise the question of conflict or appearance of conflict and the trial judge is

considering the "competing or differing interests" involved.... Because of the possibility that defendant's views, if based on inadequate exploration of relevant factors, could affect the possibility of a later collateral attack on any conviction entered while represented by an Assistant Deputy Public Defender ... the defendant's desires, expressed after he is fully advised, should be considered as part of the totality of the circumstances relating to whether the Public Defender's assignment of counsel should be upheld. 260 *N.J.Super.* at 315–16 [616 *A.*2d 926].

Then in *State v. Jimenez,* 175 *N.J.* 475, 493–94, 815 *A.*2d 976 (2003), another public defender case, the Supreme Court, while acknowledging that the defendant's consent is not necessarily controlling, stressed the importance of conducting a colloquy on the record to determine whether the waiver of a possible conflict of interest by the defendant is made knowingly.

Ironically, in *State v. Davis,* 366 *N.J.Super.* 30, 36, 840 *A.*2d 279 (App.Div.2004), the Public Defender expressly recognized the need for court approval when seeking the reassignment of a pool attorney because of a possible conflict of interest. Instead of simply "pooling out the case," the Public Defender wrote a letter to the Court seeking approval to reassign the matter unless (1) the court determined that there was no conflict of interest or appearance of an impropriety, (2) the Prosecutor did not seek the pool attorney's disqualification, and (3) the client consented to the pool attorney's continued representation. *Ibid.*

The Public Defender also argues that since *N.J.S.A.* 2A:158A–10 provides that the Public Defender retains "control and supervision" over cases reassigned to pool attorneys, there is no substitution of attorneys that triggers *R.* 1:11–2 or the need for court approval. Since the "same firm" continues to represent the defendant after reassignment, *R.* 1:11–2 simply does not apply. Logic and authority are to the contrary.

Legislation cannot be interpreted to reach absurd results. To allow the Public Defender to exercise substantive "control and supervision" over private attorneys appointed because of conflict of interest would deprive the defendants of independent counsel guaranteed by law and the constitution. In recognition of this principle, *N.J.S.A.* 2A:158A–9 requires the Public Defender "to

provide **independent** counsel to multiple defendants whose interests may be in conflict." In cases assigned to private pool attorneys because of conflicts of interest, it is obvious that the "control and supervision" envisioned in the statute can only properly extend to financial and administrative oversight. Indeed, in *State v. Bell,* our Supreme Court held that in multiple representation cases, even staff attorneys employed by the Public Defender should not be treated as members of the same firm, 90 *N.J.* at 167, 447 *A.*2d 525. In *Davis, supra* 366 *N.J.Super.* at 40, 840 *A.*2d 279, the court held that although "a pool attorney has a contractual relationship" with the Public Defender, he has the same professional obligations to the client as any other privately retained attorney has.

In further support of the one firm argument, the Public Defender attempts to draw an analogy to Attorney General and County Prosecutor reassignments. This analogy is obviously flawed since neither the Attorney General nor the County Prosecutors represent criminal defendants. Moreover, while the Public Defender Act is silent on reassignments, the Criminal Justice Act, *N.J.S.A.* 52:17B–1, provides that when a County Prosecutor has a conflict of interest, the Attorney General may supersede the case and become the attorney of record. *Accord N.J.S.A.* 52: 17B–107. *State v. Harvey,* 176 *N.J.* 522, 532, 826 *A.*2d 597 (2003). In any event, there is simply no doubt that County Prosecutor and Attorney General assignments, as well as, exercise of statutory discretion, are subject to court review if they raise any question of conflict of interest or the defendant's right to a fair and speedy trial. *See State v. J.M.,* 182 *N.J.* 402, 866 *A.*2d 178 (2005); *State v. Loyal,* 164 *N.J.* 418, 439–40, 753 *A.*2d 1073 (2000); *In re Petition for Review of Opinion No. 569 of the Advisory Committee on Prof'l Ethics,* 103 *N.J.* 325, 511 *A.*2d 119 (1986); *In re Advisory Opinion on Prof'l Ethics No. 361,* 77 *N.J.* 199, 390 *A.*2d 118 (1978); *State v. Leonardis,* 73 *N.J.* 360, 381, 375 *A.*2d 607 (1977). *See also State v. Baynes,* 148 *N.J.* 434, 443–44, 690 *A.*2d 594 (1997); *State v. Kirk,* 145 *N.J.* 159, 174, 678 *A.*2d 233 (1996); *State v. Vasquez,* 129 *N.J.* 189, 195–97, 609 *A.*2d 29 (1992).

### Conclusion

As the Public Defender concedes, there are thousands of cases each year where the Public Defender reassigns matters from a staff attorney to a pool attorney without formal compliance with *R.* 1:11–2. "Conflicts" often arise or are "discovered" after the arraignment status conference, after an Assistant Deputy Public Defender has entered an appearance pursuant to *R.* 3:8–3, and after the Public Defender has been representing the defendant for some time. In the overwhelming majority of cases, the Assistant Deputy Public Defender, rather than submit certifications, will simply advise the court of the conflict and the intention to seek reassignment on the record in the presence of the defendant, the Prosecutor and other defense counsel. This practice is consistent with the spirit of the rule, since it gives all interested parties and the court notice and an opportunity to consider whether the proposed substitution of counsel may impact protected rights and interests or the integrity of the trial process. Given the Public Defender's commendable history of effective representation, absent any objection, courts generally give great deference to the Public Defender's requests and the reassignments take place with tacit court approval and relaxation of the Rules pursuant to *R.* 1:1–2.

Unfortunately, the Public Defender has at other times, simply reassigned cases to private counsel without giving the defendant and the interested parties an opportunity to be heard and without oversight or approval of the court. This practice has resulted in numerous problems. Files have been misplaced, appearances have been missed (as in this matter), discovery has been lost or diverted, unnecessary delays have occurred, and defendants have complained of ineffective representation.

Each year the courts are asked to hear hundreds of appeals, petitions for post-conviction relief, and other complaints from defendants claiming ineffective assistance of counsel. In its most recent opinion dealing with alleged ineffective assistance of Counsel, our Supreme Court was confronted with a case that was

"transferred" from an Assistant Deputy Public Defender to a private pool attorney only one month before trial. *State v. Arthur*, 184 *N.J.* 307, 877 *A.*2d 1183 (2005). In that case, the assigned Assistant Deputy Public Defender represented the defendant for fourteen months but apparently did little trial preparation. *Id.* at 334, 877 *A.*2d 1183. Then, approximately one month before trial, the Public Defender transferred the case to a pool attorney. *Id.* at 337, 877 *A.*2d 1183 (Albin, dissenting). "The file given to counsel did not contain any defense investigative reports, statements of witnesses, or photographs. Defense counsel first met his client at the pretrial conference," *Ibid.* Without an adequate record of the transfer, the court was unable to determine "whether defense counsel bears sole responsibility for the failure to interview ... potential defense witnesses ... or whether that failure reflects systemic problems within the Public Defender's office." *Id.* at 332, 877 *A.*2d 1183.

In view of all of the foregoing, this court concludes that there is no legal authority or practical justification for the Public Defender to reassign matters to private attorneys because of conflicts of interest without following *R.* 1:11–2 or otherwise seeking court approval. To allow such a practice would strip the court of its authority and its ability to protect important rights and interests and to maintain the integrity of the trial process. Given the importance of the rights and interests at stake, it is not so onerous a burden to comply with *R.* 1:11–2, or in the alternative, to simply appear in court and obtain approval for substitution of counsel.

■ Accordingly, the court holds that after entering the required appearance at the arraignment status conference, pursuant to *R.* 3:8–3, the Public Defender may only reassign a case to a private pool attorney without court approval in accordance with *R.* 1:11–2. This will protect all parties whose rights and interests may be implicated. In the alternative, or when there is any question about or objection to the reassignment, the Public Defender must appear and advise the court on the record of the reasons for the proposed reassignment in the presence of the

defendant (co-defendant if any) and the prosecutor. After hearing from the defendant and the other interested parties the court will then be in a position to determine whether there is good cause for the substitution.