**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4621-16T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANDREW J. CONTALDI,

     Defendant-Appellant.

_____

Argued November 26, 2018 – Decided  January 16, 2019

Before Judges Fasciale and Rose.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 09-01-0069.

Robert Carter Pierce, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Robert Carter Pierce, on the briefs).

Lisa Sarnoff Gochman, Assistant Prosecutor, argued the cause for respondent (Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney; Lisa Sarnoff Gochman, of counsel and on the brief).

PER CURIAM

Defendant Andrew Contaldi appeals from an April 28, 2017 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. After reviewing the record in light of the contentions advanced on appeal, we reverse and remand for an evidentiary hearing.

I.

We incorporate by reference the facts and procedural history set forth in our prior unpublished opinion. State v. Contaldi, No. A-5408-10 (App. Div. Dec. 12, 2013) (slip op. at 2-8). In sum, between December 2007 and May 2008, defendant, his half-brother Michael Maldonado, Philip Dorsi, III, and Lance Schaller, Jr. conspired to distribute an aggregate quantity of one-half ounce or more of cocaine, and distributed ten grams or less of cocaine to undercover officers on fifteen occasions in Old Bridge, Woodbridge, Keyport, Matawan and Aberdeen.[1] Conceding he sold cocaine, "The sole issue in the case was whether [defendant] was a 'leader' of a drug trafficking network."

Following a jury trial, defendant was convicted of fifty-five counts of second- and third-degree drug offenses, and one count of first-degree leader of a narcotics trafficking network, N.J.S.A. 2C:35-3. Defendant was sentenced to

---

[1] The aggregate quantity of cocaine distributed was less than two ounces.

an aggregate term of life imprisonment with twenty-five years of parole ineligibility.

Pertinent to this appeal, on April 6, 2009, Dorsi attempted to plead guilty to second-degree conspiracy and related drug offenses, in exchange for a seven-year term of imprisonment with two years of parole ineligibility. During his allocution, however, Dorsi stated that defendant was only one of his cocaine suppliers, and did not provide him with a cellphone or car. In essence, Dorsi denied that defendant was the "leader" of the conspiracy.

Because Dorsi's statements varied from the State's proofs, the assistant prosecutor recommended that the court refrain from entering defendant's guilty plea. Although the assistant prosecutor did not intend to call Dorsi as a witness at defendant's trial, she was concerned that Dorsi's allocution provided a basis for defendant to "call [Dorsi] as a witness and he c[ould] come in and say oh, no, [defendant] was[ not] a leader, he was just my drug dealer."

The court adjourned Dorsi's plea hearing to review the State's discovery. One week later, the trial court refused to accept Dorsi's guilty plea, finding Dorsi was "not wholly forthcoming" because his factual basis only told the court "part of the story." Dorsi's trial was scheduled for June 15, 2010, jointly with defendant's trial. However, in the interim, Dorsi cooperated with the State and

3

pled guilty to second- and third-degree drug offenses on January 19, 2010. The State recommended a five-year term of imprisonment without a term of parole ineligibility. In exchange, Dorsi agreed to testify truthfully against any co-defendants at trial.

Thereafter, Dorsi informed the State he would not testify against defendant. It is unclear from the record whether the State memorialized the conversation in a writing, but that information was not provided to defendant's trial counsel. Finding Dorsi's change of heart constituted a material breach, the court determined the plea agreement was "null and void" and vacated Dorsi's guilty plea on June 21, 2010. Defendant's trial counsel was present for that hearing, but the substance of Dorsi's April 2010 hearings was not set forth on the record. By that date, defendant had rejected the State's plea offer, i.e., a fifty-year term of imprisonment with twenty-five years of parole ineligibility. Three months later, Dorsi entered an "open-ended" guilty plea to all charges for which he was indicted without a sentencing recommendation from the State.

Maldonado also cooperated with the State and pled guilty to second- and third-degree drug offenses in February 2010. In exchange, the State recommended an eight-year term of imprisonment with four-years of parole ineligibility. Maldonado's factual basis supporting his guilty plea included

statements that he worked for defendant. For example, before defendant was incarcerated for a violation of probation, he gave Maldonado a package of cocaine to "run [defendant's] business while he was gone." Maldonado did not testify at defendant's trial.

Immediately after his arrest, Schaller cooperated with law enforcement officers and was released on his own recognizance. He agreed to testify against defendant and pled guilty to three drug offenses in exchange for a probationary recommendation by the State.

Notably, by correspondence dated April 24, 2009, defendant's trial counsel had requested that the State provide additional discovery, including "all notes of conversations, notes of meetings, written and oral plea offers, all pro[ff]ers of testimony, and all statements from co-defendants . . . Schaller . . . and/or . . . Dorsi." Citing N.J.R.E. 410,[2] the State refused to provide "any

---

[2] N.J.R.E. 410 provides, in pertinent part:

> [E]vidence of a plea of guilty which was later withdrawn, of any statement made in the course of that plea proceeding, and of any statement made during plea negotiations when either no guilty plea resulted or a guilty plea was later withdrawn, is not admissible in any . . . criminal proceeding against the person who made the plea or statement or who was the subject of the plea negotiations.

information regarding any possible on[]going plea negotiations with the co-defendants."

Defendant's convictions were upheld on direct appeal. Contaldi, slip op. at 31. Although defendant did not appeal his sentence, the parties agreed that the judgment of conviction (JOC) incorrectly included two Drug Enforcement and Demand Reduction (DEDR) penalties. Accordingly, "We remand[ed] for the limited purpose of correcting the [JOC] to reflect the imposition of one DEDR penalty . . . ." Id. at 30-31. The Supreme Court thereafter denied certification. State v. Contaldi, 218 N.J. 276 (2014).

Defendant then filed the present PCR petition alleging the State violated his Sixth Amendment right to compulsory process and Brady v. Maryland, 373 U.S. 83 (1963), by concealing his co-defendants' exculpatory statements. Defendant also claimed ineffective assistance of his trial and appellate counsel.

Specifically, defendant claimed his trial counsel failed to: (1) object to hearsay statements made by the lead officer and Schaller; (2) render correct advice regarding defendant's right to testify; (3) request proper jury instructions; (4) object to the prosecutor's improper summation comments; (5) investigate and call witnesses due to defendant's financial inability to retain an investigator; and (6) object to the unqualified expert opinions of two State witnesses.

6

Further, defendant contended his attorney on direct appeal failed to argue the trial court erred by admitting in evidence statements that defendant was incarcerated for a violation of probation, and permitting unqualified expert testimony. Defendant also claimed appellate counsel failed to argue defendant's life sentence was disproportionate in view of the small quantity of drugs involved, and violated the Eighth Amendment's proscription against cruel and unusual punishment.

In support of his amended verified petition,[3] defendant submitted his own thirteen-page certification; two affidavits from his trial attorney; affidavits from Maldonado and two other individuals; and an affidavit from a PCR investigator summarizing interviews with Maldonado and Maldonado's plea counsel.[4]

Among other things, defendant's certification, dated December 2, 2015, claimed his trial counsel failed to contact Dorsi and Maldonado who would have testified that defendant "was not the leader, just a seller as they were." He further claimed trial counsel failed to conduct a proper investigation because defendant "ran out of money and could not pay an investigator." Defendant also

---

[3] Defendant's initial petition was not included in his appendix.

[4] Neither Dorsi nor Dorsi's plea counsel responded to two successive PCR investigators' attempts to contact them.

alleged his trial counsel "did not discuss any issue with [him] concerning the introduction of the video-tape[d statement of Schaller,]" including Schaller's confirmation that defendant "did a stint in jail."

Trial counsel's first affidavit listed a number of his own trial errors, including failing to redact hearsay statements and references to defendant's "stint in jail" from Schaller's video-taped statement.[5]  In another affidavit, trial counsel annexed a handwritten letter, purportedly from Dorsi to defendant and forwarded by defendant to counsel while the proceedings were pending.  In that letter, Dorsi claimed the State offered him a seven-year sentence provided he did not "help [defendant] out at trial."  Counsel also asserted the State did not furnish Maldonado's proffer statement in discovery.

In his second affidavit, trial counsel claimed the State did not provide the transcript of Dorsi's initial attempted guilty plea on April 9, 2009, and did not disclose "that Dorsi gave exculpatory testimony during his factual basis" on that

_____

[5]  As set forth in the State's merits brief, trial counsel indicated he spoke with defendant before Schaller's video-taped statement was played before the jury and defendant "concur[red] in the decision."  Counsel elaborated: "I've explained to him as well that there are objectionable areas of that tape that we could object and seek to have stricken from it, but [defendant] also feels that the jury might as well get the flavor of the whole thing."

date. Had he known Dorsi told the State he did not work for defendant, trial counsel "would likely have called . . . Dorsi as a defense witness."

In his affidavit dated February 6, 2016, Maldonado asserted that, prior to his guilty plea, he met with the State's representatives and indicated defendant "was not in charge." He recalled that the assistant prosecutor threatened to rescind the plea offer if Maldonado testified on behalf of defendant. It is unclear from the record whether the State memorialized that conversation in a writing, but that information was not provided to trial counsel.

Defendant's mother, Sylvia Vetri, provided an affidavit claiming defendant lived at a poverty level and did not have any assets "that would indicate that he was a leader of a drug trafficking network." Vetri claimed trial counsel did not contact her to testify at defendant's trial regarding his financial circumstances.

The PCR court[6] rejected all of defendant's PCR allegations. In its written decision, the court concluded it was "unnecessary to grant an evidentiary hearing since there [was] no reasonable probability that . . . [d]efendant's PCR claims

---

[6] Defendant's trial, sentencing, and his co-defendants' plea proceedings were not conducted before the PCR court.

[we]re meritorious and because such a hearing would not aid in the [c]ourt's analysis of . . . [d]efendant[']s entitlement to [PCR]."

Regarding defendant's claims of prosecutorial misconduct, the trial court dismissed defendant's argument that the State threatened or intimidated Dorsi and Maldonado with "additional prison time and perjury charges if [they] aided [defendant]'s defense." In doing so, the PCR court summarily assessed the credibility of Maldonado's affidavit, finding, "There is no reason to believe these statements over Maldonado's other sworn accounts which place [defendant] at the head of the distribution ring." The court likewise discounted Dorsi's letter to defendant, concluding: "Dorsi was plainly attempting to avail himself of the benefit of a plea deal while mutually leaving an open door for his criminal associate[, defendant]'s defense."

Further, the PCR court found defendant's Brady violation argument was speculative, relying on trial counsel's "insinuation that [he] might have pursued a different angle" if he had received in discovery the purported exculpatory statements of Dorsi and Maldonado. In doing so, the PCR court determined both co-defendants "had already proven to be exceptionally unreliable witnesses" and "had already provided sworn statements that placed [defendant] at the head of the distribution network."

10

Relevant to defendant's ineffective assistance of trial and appellate counsel claims before us, the PCR court dismissed the claims as barred on procedural grounds, pursuant to Rule 3:22-4(a). However, the court considered the merits of defendant's claims.

Specifically, the PCR court determined trial counsel "made objectively reasonable choices at trial which simply did not result in an acquittal[,] . . . [and] a failed but reasonable strategy does not constitute ineffective assistance of counsel." The court also dismissed defendant's claim that trial counsel failed to investigate and call defense witnesses to testify on his behalf due to his financial inability to retain an investigator because "the pertinent 'kingpin' statute yields no evident requirement that the State must prove a defendant lived an extravagant or even financially stable life."

Finally, the PCR court determined defendant's claims of ineffective assistance of appellate counsel lacked merit. Citing our opinion on direct appeal, the PCR court determined that the references at trial to defendant's incarceration for a violation of probation did not violate N.J.R.E. 404(b) because they were intrinsic to the crime charged.

Regarding defendant's claim that appellate counsel failed to argue his sentence violated the Eighth Amendment and was not commensurate with the

crime, the PCR court observed that defendant's sentence was in accordance with "the [c]onstitutionality of the mandatory minimum life sentence for a first-degree conviction under N.J.S.A. 2C:35-3.  See State v. Kadonsky, 288 N.J. Super. 41 (App. Div. 1996)."[7]  This appeal followed.

On appeal, defendant renews most of the arguments raised before the PCR court.  In particular, defendant argues:

> POINT I
>
> THE PCR COURT ERRED BY NOT GRANTING [DEFENDANT]'S PETITION BECAUSE THE PROCEDURES, POLICIES AND CONDUCT OF THE PROSECUTOR VIOLATED [DEFENDANT]'S [SIX]TH AMENDMENT RIGHT TO COMPULSORY PROCESS TO CALL AS DEFENSE WITNESSES DORSI AND[/]OR MALDONADO.
>
> POINT II
>
> THE PCR COURT ERRED BY NOT GRANTING [DEFENDANT]'S PETITION BECAUSE THE STATE FAILED TO DISCLOSE CO-DEFENDANT DORSI'S EXCULPATORY TESTIMONY AT THE ABORTED PLEA HEARING AND DORSI'S AND MALDONADO'S EXCULPATORY STATEMENTS GIVEN TO THE PROSECUTOR, WHICH VIOLATED [DEFENDANT]'S RIGHT TO DISCOVERY PURSUANT TO BRADY V. MARYLAND.

---

[7]  The PCR court erroneously determined that defendant appealed his sentence to the Supreme Court and found there was no merit to his sentencing argument.

POINT III

THE PCR COURT ERRED BY NOT GRANTING [DEFENDANT]'S PETITION OR, IN THE ALTERNATIVE, ORDERING AN EVIDENTIARY HEARING ON [DEFENDANT]'S CLAIMS OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

. . . .

B. Trial counsel was ineffective for failing to object to [the lead officer's] testimony that a confidential informant told him Dorsi was a drug runner for [defendant] and Schaller's testimony that he heard a gun crazed man named "Jamie" used to run drugs for [defendant].

C. Trial counsel was ineffective for introducing Schaller's video-taped statement that included inadmissible N.J.R.E. 404(b) evidence.

D. Trial counsel was ineffective for failing to investigate [defendant]'s defense.

POINT IV

[DEFENDANT] WAS DEPRIVED EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

A. Appellate counsel failed to raise the issue that the trial court erred by permitting the State to introduce evidence that [defendant] was imprisoned at the Middlesex County Jail and violated his probation.

B. The life sentence imposed upon [defendant] violated the Eighth Amendment's proscription against disproportionate punishment.

13

II.

"[PCR] is New Jersey's analogue to the federal writ of habeas corpus." State v. Preciose, 129 N.J. 451, 459 (1992). Pursuant to Rule 3:22-2(a), a criminal defendant is entitled to post-conviction relief if there was a "[s]ubstantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey."

To establish a prima facie claim of ineffective assistance of counsel, the defendant is obliged to show not only the particular manner in which counsel's performance was deficient, but also that the deficiency prejudiced his right to a fair trial. Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 60-61 (1987) (Strickland/Fritz standard).

A PCR petitioner asserting that his trial attorney inadequately investigated a potential witness "must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." State v. Porter, 216 N.J. 343, 353 (2013) (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999)). "Even a suspicious or questionable affidavit supporting a

A-4621-16T2

PCR petition 'must be tested for credibility and cannot be summarily rejected.'" Id. at 355 (quoting State v. Allen, 398 N.J. Super. 247, 258 (App. Div. 2008)).

Further, criminal defendants have a Sixth Amendment right to counsel for a first appeal as a matter of right. Douglas v. California, 372 U.S. 353, 356, (1963). As a result, a defendant may bring an ineffective assistance of counsel claim as to his appellate counsel. Evitts v. Lucey, 469 U.S. 387, 394 (1985).

Appellate counsel, however, is not required to present all non-frivolous claims. Jones v. Barnes, 463 U.S. 745, 751 (1983). The appellate attorney may use professional judgment in deciding whether or not to bring meritorious claims suggested by the client. Id. at 754. Further, appellate counsel need not raise claims that are "legally unworthy of pursuit." State v. Webster, 187 N.J. 254, 256 (2006). The standard of review for assessing ineffective assistance of appellate counsel is the Strickland/Fritz standard discussed above. State v. Gaither, 396 N.J. Super. 508, 513 (App. Div. 2007); State v. Morrison, 215 N.J. Super. 540, 546 (App. Div. 1987).

When petitioning for PCR, the defendant must establish "by a preponderance of the credible evidence" entitlement to the requested relief. State v. Nash, 212 N.J. 518, 541 (2013) (quoting Preciose, 129 N.J. at 459). However, the mere raising of a claim for PCR does not entitle the defendant to

15

an evidentiary hearing. Cummings, 321 N.J. Super. at 170. Rather, PCR courts should grant evidentiary hearings and make a determination on the merits only if the defendant has presented a prima facie claim of relief, material issues of disputed facts lie outside the record, and resolution of the issues necessitates a hearing. R. 3:22-10(b); see also Porter, 216 N.J. at 355.

When determining whether to grant an evidentiary hearing, the PCR court must consider the facts in the light most favorable to the defendant. Preciose, 129 N.J. at 462-63. We review a court's decision to deny a PCR petition without an evidentiary hearing for abuse of discretion. Id. at 462.

Applying these principles, we conclude the PCR court mistakenly exercised its discretion by denying defendant's request for an evidentiary hearing. As our Supreme Court stated in Porter:

> Certain factual questions, "including those relating to the nature and content of off-the-record conferences between defendant and [the] trial attorney," are critical to claims of ineffective assistance of counsel and can "only be resolved by meticulous analysis and weighing of factual allegations, including assessments of credibility." [State v. Pyatt, 316 N.J. Super. 46, 51 (App. Div. 1998).] These determinations are "best made" through an evidentiary hearing. Ibid.
>
> [Porter, 216 N.J. at 355 (first alteration in original).]

Here, in addition to his own certified statements, defendant submitted several affidavits and statements, including two affidavits from his trial counsel, supporting his PCR petition that could be properly assessed only by conducting an evidentiary hearing and making credibility determinations based on the testimony provided by the affiants. See id. at 353. Those credibility determinations were erroneously made by the PCR court without an evidentiary hearing.

For example, in dismissing defendant's claim that his meager lifestyle was irrelevant to the kingpin statute, the PCR court failed to consider the impact of defendant's financial circumstances on his ability to mount a proper defense. See In re Cannady, 126 N.J. 486, 492 (1991) (requiring the Office of the Public Defender to render necessary services even if the defendant is represented by private counsel). If trial counsel's decision was indeed made exclusively on economic grounds without concern for trial strategy, defendant might well be entitled to a new trial if the court finds that the lack of funds impacted his ability to properly investigate his defense.

Further, under the particular facts presented, an evidentiary hearing was also necessary to determine the circumstances underlying the State's purported failure to disclose the favorable statements made by Dorsi and Maldonado

during the course of their proffer sessions with the State, and the statements made by Dorsi at his April 2009 plea hearings, which arguably may have affected trial counsel's strategic decisions to call them as witnesses at trial. In turn, appellate counsel's ability to properly raise those issues on appeal may have been impeded because appellate counsel was not in possession of the purported statements minimizing defendant's leadership role. Nor was appellate counsel in possession of defendant's December 2, 2015 certification indicating he disputed trial counsel's strategy of permitting Schaller's entire videotaped statement in evidence.

We also find the PCR court erroneously determined that we considered defendant's sentence on direct appeal and that our Supreme Court "consider[ed] the facts surrounding [defendant]'s . . . sentence, and determined that no review was necessary." Sentencing was not raised on direct appeal. Consequently, on remand, the PCR court should address the viability of defendant's disparate sentencing argument and whether appellate counsel was ineffective for failing to raise that argument on direct appeal.

While it is well-settled that a term of life imprisonment for New Jersey's drug kingpin statute is not unconstitutional, State v. Afanador, 134 N.J. 162, 170 (1993), it is unclear from the record why appellate counsel did not raise a

18

disparity argument under the circumstances of this case compared with those of other kingpins in Monmouth County. Accordingly, on remand the PCR court should consider defendant's claim that his sentence is disparate vis-à-vis other similarly-situated "leaders" of drug-trafficking networks.

In sum, an evidentiary hearing was necessary to assess credibility and further develop the facts underlying the actions and strategies of defendant's trial and appellate attorneys in connection with defendant's claims of ineffective assistance and his allegations that the State violated Brady v. Maryland and his right to compulsory process. None of those overlapping issues can be resolved by reference to the record, because, for example, the statements of Dorsi and Maldonado to the State minimizing defendant's leadership role to the prosecutor are not part of the record. R. 3:22-10(b).

Finally, we disagree with the State's contention that the favorable statements of Dorsi and Maldonado were not discoverable pursuant to N.J.R.E. 410. Relevant here, that evidentiary rule clearly limits the introduction of statements made during plea bargaining or plea proceedings; it is not a discovery rule and does not obviate the State's Brady obligations. "In order to establish a Brady violation, the defendant must show that: (1) the prosecution suppressed

evidence; (2) the evidence is favorable to the defense; and (3) the evidence is material." State v. Martini, 160 N.J. 248, 268 (1999).

Further, defendant had "the right to have compulsory process for obtaining witnesses in his favor. That guarantee provides a criminal defendant with nothing less than a meaningful opportunity to present a complete defense." State v. Garcia, 195 N.J. 192, 201-02 (2008) (citation and internal quotation marks omitted). Defendant's right to present "witnesses in his own defense is a fundamental element of due process of law." Id. at 202 (internal quotation marks omitted).

Moreover, in State v. Correa, 308 N.J. Super. 480, 485-87 (App. Div. 1998), we recognized the State cannot require a defendant to refrain from testifying on behalf of a co-defendant as part of a plea agreement. In Correa, co-defendant Angel Colon agreed not to testify at Correa's murder trial. Id. at 483. In exchange, the State promised not to seek an extended sentence for Colon. Ibid. Correa's attorney was unaware of that agreement. Ibid. We held that such an agreement violated Correa's Sixth Amendment right to compulsory process:

> The existence of the plea agreement between Colon and the State obscured the basis for Colon's decision not to testify at the time of the trial. In other words, we do not know whether Colon's decision not to testify was

20

because he exercised his Fifth Amendment right not to testify or because he wanted to secure the benefit of the State's offer not to seek an extended term sentence.

[Id. at 485-86.]

See also State v. Fort, 101 N.J. 123, 131 (1985) ("Once the State extracts a promise not to testify as a condition of a plea agreement, it is practically impossible to determine whether a witness refused to testify because of the privilege against self-incrimination or because of a desire to perform the promise.").

On remand, evidence may be adduced at the evidentiary hearing that sheds light on the Brady factors and defendant's right to compulsory process. If the State violated Brady or prevented defendant from calling Maldonado or Dorsi, defendant might be entitled to seek a new trial on those grounds.

We therefore remand for an evidentiary hearing in accordance with this opinion. We express no view on the merits of any of defendant's contentions.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4621-16T2