775 A.2d 733 (2001)
342 N.J. Super. 93
STATE of New Jersey, Plaintiff-Respondent,
v.
Samuel CANN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted May 23, 2001.
Decided July 6, 2001.
*734 Peter A. Garcia, Acting Public Defender, attorney for appellant (Arthur J. Owens, Designated Attorney, on the brief).
Donald C. Campolo, Assistant Attorney General, Acting Essex County Prosecutor, attorney for respondent (Joan E. Love, Special Deputy Attorney General, of counsel and on the brief).
Before Judges KEEFE, STEINBERG and WEISSBARD.
The opinion of the court was delivered by STEINBERG, J.A.D.
An Essex County Grand Jury returned Indictment No. 91-2-823, charging defendant with the following offenses: first-degree murder of Pedro Flores, N.J.S.A. 2C:11-3(a)(1)(2) (count two); first-degree felony murder of Pedro Flores, N.J.S.A. 2C:11-3(a) (count three); first-degree kidnapping of Pedro Flores, N.J.S.A. 2C:13-1(b)(1) *735 (count four); first-degree robbery of Pedro Flores, N.J.S.A. 2C:15-1 (count five); second-degree attempted murder of M. T., N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3 (count six); first-degree aggravated sexual assault on M.T., N.J.S.A. 2C:14-2(a) (count seven); first-degree kidnapping of M.T., N.J.S.A. 2C: 13-1(b)(1) (count eight); first-degree robbery of M.T., N.J.S.A. 2C:15-1 (count nine); third-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (count ten), and second-degree possession of a certain weapon, a handgun, with a purpose to use it unlawfully against the person of another, N.J.S.A. 2C:39-4(a) (count eleven).[1] The Grand Jury also named Rodney Lance and Eugene Pickney as co-defendants.
The State's pretrial motion to sever the charges so that the three defendants could stand trial separately was granted. A jury found defendant guilty on all counts. The trial judge sentenced defendant to life imprisonment, with a thirty-year period of parole ineligibility on count two, a consecutive term of twenty years with a ten-year period of parole ineligibility on count four, the kidnapping of Pedro Flores, and an additional consecutive twenty-year term of imprisonment with ten years of parole ineligibility on count seven, the aggravated sexual assault of M.T. All other sentences were imposed to run concurrently. In addition, the felony murder conviction was merged into the conviction for murder, and the conviction for possession of a weapon for an unlawful purpose was merged into counts four, five, seven, eight, and nine. The appropriate monetary penalties were also imposed.
In an unpublished opinion, with the exception of the conviction on count two for purposeful or knowing murder, we affirmed the judgment of conviction. Because of defects in the charge regarding accomplice liability, we reversed the conviction on that count, but further provided that at the election of the State, the trial judge could unmerge the conviction on count three, the felony murder conviction, and sentence defendant on that conviction. State v. Cann, Docket No. A-3878-92, decided March 6, 1996. The Supreme Court denied defendant's petition for certification. State v. Cann, 145 N.J. 375, 678 A.2d 715 (1996).
On remand, the State elected not to retry the purposeful or knowing murder count. Accordingly, the trial judge unmerged the felony murder conviction and sentenced defendant on that count to life imprisonment with thirty years to be served without parole. The judge then reimposed the same sentences previously imposed. Accordingly, defendant's aggregate sentence was life in prison, plus twenty years, with fifty years of parole ineligibility.
The defendant again appealed to this court. In an unpublished opinion, we affirmed the conviction. State v. Cann, Docket No. 4669-95, decided November 10, 1997. Again, the Supreme Court denied defendant's petition for certification. State v. Cann, 153 N.J. 48, 707 A.2d 151 (1998). Defendant then filed a petition for post-conviction relief. Although the petition was filed with the Essex County Criminal Clerk on April 6, 1998, defendant provided a letter of transmittal dated March 27, 1998. A hearing on defendant's petition was conducted on June 10, 1999. On June 11, 1999, the judge entered an order denying defendant's application for an evidentiary hearing and also denying *736 the application. The judge also issued a written opinion. Defendant appeals. We affirm.
The facts relevant to the disposition of this appeal, as produced by the State at trial, are the following: M.T. lived with her husband and children in Bloomfield. On September 27, 1986, she rode with a friend to Newark in order to purchase drugs. She had just finished a drug detoxification program. She left the car looking for a drug seller. Her friend saw police activity in the area and drove away, leaving M.T. on the street.
Shortly thereafter, M.T. met Pedro Flores. While they were walking together, they were accosted by defendant, along with Pickney and Lance. They demanded money and drugs. They forced M.T. and Flores into a car at gunpoint, and grabbed M.T.'s pocketbook. The two were then taken to a backyard and, at gun point, the three assailants took turns raping M.T., both vaginally and orally. Thereafter, the victims were forcefully taken to an empty lot where all three men again sexually assaulted M.T. From there, the abductors took Flores and M.T. around the corner to a playground, where they again sexually assault M.T. In addition, they forced Flores to have sex with her. Lance then placed a jacket on Flores' head and shot and killed him. Lance also shot M.T., who had placed her hands to the back of her head to protect herself. When the gun went off, the bullet went through M.T.'s finger and lodged in her skull. The three assailants left M.T. unconscious, believing she was dead.
In his appendix filed in conjunction of this appeal, defendant has only supplied excerpts from the brief and appendix he filed in support of his initial petition. One of the excerpts is the table of contents which sets forth the following contentions: (1) "The trial court erred in admitting prejudicial testimony and [an] inadmissible weapon into evidence and denied appellant a fair trial" and (2) "He was denied the effective assistance of counsel." At the hearing, defense counsel clarified the contentions raised by defendant in his petition. Specifically, he contended that the evidence regarding an earlier incident at Georgia King Village should not have been admitted at trial. He also claimed that evidence that an officer saw Lance the next morning with a gun, as well as the gun itself, should not have been admitted at the trial since it was not presented to the Grand Jury. He also contended that trial counsel was ineffective for the following reasons: (1) failing to file a pretrial motion to suppress any testimony of the Georgia King Village incident; (2) failing to file a pretrial motion to suppress any testimony regarding the Lance gun arrest, and drug use by Lance and Pickney; (3) failed to move to dismiss the indictment by virtue of the failure of the prosecutor to submit to the Grand Jury the fact that Tyronne Kornegay, who was not charged, had previously admitted to participating in the incident, which was confirmed by Linda Moore; (4) failing to move to dismiss the indictment because the State failed to submit to the Grand Jury that fact that M.T. had identified three other individuals rather than defendant; (5) failing to call Detective Cocchi to testify that M.T. had identified other individuals from a photographic array; (5) failing to request "a DNA analysis of the semen stains or any of the other stains that were taken from the panties and other garments that were retrieved in the course of the investigation of the case, as well as that which was retained in the rape kit, as it might have provided a more precise measure to provide the attribution of the stain as to a person that would exculpate the defendant"; (6) failing to request a DNA analysis of Flores since M.T. had testified that *737 the perpetrators had forced him to have intercourse with her;[2] (7) failing to appropriately cross-examine M.T. on the identification issue, specifically that she had made a comment during a recess that she then recognized defendant; (8) failing to call Lance as a witness; (9) failing to present Charles Alexander as an alibi witness.
In addition, defendant asserted that appellate counsel was ineffective in failing to adequately challenge the accomplice liability charge in the second direct appeal.
In his written opinion, the judge concluded that many of the claims in the petition for post-conviction relief should have been raised on direct appeal and were procedurally barred by R. 3:23-4(a ground for relief raised in a petition for post-conviction relief is procedurally barred if it could reasonably have been raised in a prior proceeding). The judge concluded that there was no fundamental injustice sufficient to relax the procedural bar. In addition, he concluded that some of the issues raised on appeal have previously been decided by this court and thus were barred by R. 3:22-5 (a prior adjudication upon the merits of any ground for relief is conclusive). The judge also determined that the petition was time-barred because it was not filed within five years of defendant's conviction. R. 3:22-12 (a petition for post-conviction relief must be filed within five years after rendition of the judgment or sentence sought to be attacked unless it alleges facts showing that the delay was due to defendant's excusable neglect). Finally, the judge considered the contentions on the merits and generally concluded that defendant had not established a reasonable probability that the alleged deficiencies materially contributed to defendant's conviction.
On this appeal, defendant raises the following arguments:
POINT ONE
THE POST-CONVICTION RELIEF JUDGE ERRED BY FAILING TO GRANT DEFENDANT AN EVIDENTIARY HEARING ON THE ISSUE OF INEFFECTIVENESS OF TRIAL COUNSEL
POINT TWO
THE POST-CONVICTION RELIEF JUDGE ERRED IN FINDING THAT DEFENDANT'S CONTENTION THAT HE WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WAS WITHOUT MERIT
POINT THREE
THE CONFUSION OF THE POST-CONVICTION RELIEF COURT THAT DEFENDANT'S GROUNDS FOR RELIEF WERE PROCEDURALLY BARRED WAS IN ERROR
Initially, we agree with the motion judge that the petition was time-barred under R. 3:22-12, particularly in light of the fact that defendant did not even attempt to establish excusable neglect. A petition is time-barred if it does not claim excusable neglect, or allege the facts relied on to support that claim. State v. Mitchell, 126 N.J. 565, 577, 601 A.2d 198 (1992). R. 3:22-12's time-bar should only be relaxed under exceptional circumstances. State v. Afanador, 151 N.J. 41, 52, 697 A.2d 529 (1997). Moreover, in considering R. 3:22 12's time-bar, the date of the judgment of conviction controls even if there are subsequent sentencing proceedings. State v. Dugan, 289 N.J.Super. 15, 19-21, 672 A.2d 1240 (App.Div.), certif. den, 145 N.J. 373, 678 A.2d 714 (1996). While we recognize that the petition was filed only sixty days after it was time-barred, we choose not to relax the time-bar in light of defendant's *738 failure to allege or establish excusable neglect, and also in light of our conclusion that the claims set forth in the petition lack potential merit.
Notwithstanding the time-bar, we shall address defendant's contention that trial counsel was ineffective in failing to request DNA testing. In order to establish that trial counsel was ineffective, defendant must establish that trial counsel's representation fell below an objective standard of reasonableness, and, that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. State v. Marshall, 148 N.J. 89, 156-57, 690 A.2d 1 (1997). There is a wide range of what constitutes reasonable professional assistance, and there is a strong presumption that counsel's conduct falls within that range. Id. at 157, 690 A.2d 1. A petitioner must establish the right to post-conviction relief by a preponderance of the credible evidence. State v. Preciose, 129 N.J. 451, 459, 609 A.2d 1280 (1992) (internal citations omitted).
A defendant seeking to establish ineffectiveness of trial counsel for failing to request a DNA is truly in a catch-22 position. In order to be entitled to post-conviction relief, he must establish a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. Marshall, supra, 148 N.J. at 157, 690 A.2d 1. Yet, he needs the results of the requested test in order to meet that burden. Stated another way, a convicted defendant who does not have the results of a DNA test can never establish a reasonable probability that the result of the proceeding would have been different if DNA testing had been performed. Thus, we conclude that applications of this nature are not suited for post-conviction relief proceedings.
Rather, we conclude that if a defendant desires a DNA sample for testing purposes, even post-conviction, he must make an application to the trial court.
We also realize that applications of this type are not envisioned by R. 3:20-1, which authorizes a trial judge, on defendant's motion, to grant defendant a new trial "if required in the interest of justice." Without the positive results of a DNA, a defendant cannot demonstrate that the interests of justice require a new trial. In addition, in order to be entitled to a new trial on the ground of newly discovered evidence, a defendant must show that the evidence is material, was discovered after the trial, was not reasonably discoverable prior to trial, and is of such a nature that it would probably change the jury's verdict. State v. Carter, 85 N.J. 300, 314, 426 A.2d 501 (1981). Again, without the benefit of a DNA analysis, a defendant cannot sustain that burden.
The absence of a rule authorizing the filing of a motion does not deprive a litigant of the right to make an application to the court. Indeed, R. 1:1-2 specifically provides that our rules "shall be construed to secure a just determination, simplicity in procedure, [and] fairness in administration... In the absence of a rule, the court may proceed in any manner compatible with these purposes." Thus, the absence of a rule specifically authorizing a post-judgment motion seeking a DNA analysis is not an impediment to making the application, and does not deprive the trial court of the right, in appropriate circumstances, to grant the relief requested. After all, our rules are designed to accomplish substantial justice and so as to facilitate that quest they should not be construed to frustrate that goal.
We have previously held that "in a criminal case, when the State's proofs are weak, when the record supports at least a *739 reasonable doubt of guilt" an application for DNA testing should be granted. State v. Thomas, 245 N.J.Super. 428, 436, 586 A.2d 250 (App.Div.1991). Recently, we held that if defendant can establish that "newly developed DNA techniques can yield definitive findings, such tests should be ordered under the supervision of the court." State v. Velez, 329 N.J.Super. 128, 136, 746 A.2d 1073 (App.Div.2000). On the other hand, another panel of this court has recently held that a defendant is not entitled to compel the State to release evidence retained by the prosecutor for purposes of post-judgment DNA testing where the evidence of defendant's participation in the crime was overwhelming, and he did not present a defense of alibi nor present evidence that is consistent with a theory he hoped DNA testing would support. State v. Halsey, 329 N.J.Super. 553, 556-60, 748 A.2d 634 (App.Div.2000). Indeed, at trial, Halsey asserted a defense of intoxication. Id. at 554, 748 A.2d 634.
As in a petition for post-conviction relief, a defendant seeking a release of evidence in order to permit DNA testing must establish his right to such relief. Among the factors to be considered by the court are whether the sample or samples requested still exist, and, whether they have been contaminated. Defendant must also establish by a preponderance of the credible evidence that there is a reasonable probability that the outcome of the proceedings would have been different had a favorable DNA result been obtained. In addition, in cases involving a sexual attack by multiple participants, defendant must be prepared to show whether that fact would affect the conclusions reached by the DNA analysis. These suggestions of issues to be explored at a motion seeking release of evidence for DNA testing are merely examples of some of the factors we deem relevant. We leave to the litigants, and the motion judge, the development and consideration of other questions that may be pertinent in arriving at the ultimate conclusion.
We recognize that here defendant is represented by the Office of the Public Defender (OPD). Nevertheless, we have some concern as to whether specific consideration has been given to the question of who should pay for the DNA test. Because of its budgetary restraints, OPD must play an integral part in the indigency determination. Matter of Kauffman, 126 N.J. 499, 502, 600 A.2d 465 (1991). The OPD was established for the purpose of providing representation for indigent defendants charged with the commission of indictable offenses. N.J.S.A. 2A:158A-5. The OPD is mandated to provide all necessary legal services, including investigation and other preparation. Ibid. However, the Legislature also determined that the OPD may consider factors such as need and "real value to a defense," and weigh those factors against the financial constraints of OPD "in determining what are the necessary services and facilities of representation." Ibid. Thus, the Legislature has recognized that resources are not unlimited and are subject to budgetary limitations and it has given OPD discretionary authority to determine what services and facilities are to be provided to an indigent defendant. Matter of Cannady, 126 N.J. 486, 493, 600 A.2d 459 (1991).
In Cannady, the Court held that under certain circumstances, OPD may be required to provide ancillary services to an indigent defendant whom it does not represent. Id. at 492, 600 A.2d 459. However, in light of its concern that a defendant will seek services of no real value because he or she will not be required to pay for them, the Court required a defendant seeking ancillary services to apply to the OPD for funds. Id. at 493, *740 600 A.2d 459. While we recognize that here defendant is indigent and represented by the Public Defender, we believe the same considerations are present. Consequently, we hold that a defendant who seeks to obtain a DNA test at public expense must make application to the OPD for funds. A motion seeking that relief must be supported by a certification by OPD that it will pay for the tests if the application is granted. In determining whether it will fund the test, OPD must weigh defendant's needs and the real value of the requested services against the financial constraints inherent in its budget. N.J.S.A. 2A:158A-5; Cannady, supra, 126 N.J. at 498, 600 A.2d 459. As in Cannady, we further hold that if OPD rejects defendant's application, its reasons must be reduced to writing and furnished defendant. Id. at 497, 600 A.2d 459. That decision shall be subject to judicial review by the trial judge, or if the case has not yet been assigned to a specific judge, to the assignment judge or his or her designee. Ibid. Our busy trial courts should not be required to consider applications for DNA testing without some reasonable assurance that if granted, the test will be paid for and performed, subject, of course, to the court's obligation to reject the decision of OPD if the court believes a DNA test is appropriate.
We have carefully considered the record, the briefs filed, and the applicable law and conclude that the remaining issues raised by defendant on appeal are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).
Affirmed, without prejudice to defendant's right to move to compel the State to furnish samples for DNA testing.
NOTES
[1] Count one charged co-defendant Rodney Lance with first-degree murder by purposely or knowingly murdering Pedro Flores by his own conduct, N.J.S.A. 2C:11-3(a)(1) and (2). A jury found Lance not guilty of all charges.
[2] M.T. testified that Flores protested, but she told him to fake it.