818 A.2d 325

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. HARRISON HOGUE, A/K/A JERRY HOGUE,
DEFENDANT–APPELLANT.

Argued January 21, 2003—Decided March 25, 2003.

*Susan Brody,* Assistant Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Johanna Barba,* Deputy Attorney General, argued the cause for respondent (*Peter C. Harvey,* Acting Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

ZAZZALI, J.

Defendant was convicted of murder and two weapons offenses. On direct appeal before the Appellate Division, he filed a motion seeking a partial remand to the trial court to obtain forensic samples for DNA testing. The Appellate Division denied the motion and defendant moved for leave to file an interlocutory appeal from that decision. This Court granted defendant's motion.

█ The narrow question is whether defendant may request samples for DNA testing on direct appeal of his conviction or whether he must wait until the conclusion of the direct appeal process to present his request in a petition for post-conviction relief (PCR). We conclude that permitting a limited remand during defendant's direct appeal to allow defendant to request DNA testing is appropriate because that procedure promotes both efficiency and fairness. We also reject the State's argument that recently enacted *N.J.S.A.* 2A:84A–32a, a statute that addresses access to DNA testing by convicted persons, suggests that bringing a motion for DNA testing should be confined to PCR proceedings.

I

In April 1997, a garage owner discovered the dead body of Valerie Wilson, a Newark prostitute, abandoned in the weeds behind his auto repair shop. Based on multiple visible stab wounds to her chest, as well as evidence of strangulation, the medical examiner concluded that Wilson's death was caused by sharp and blunt force injuries to her head, neck, and chest. Investigators gathered forensic evidence from the scene, including

fingernail clippings from the victim and a sample of blood taken from beneath the fingernails that indicated the presence of Type A blood. They did not perform DNA testing at that time. During the victim's autopsy, the medical examiner drew a vial of the victim's blood, but it was not refrigerated. That failure caused the blood sample to degrade to the point that it could not be typed.

Approximately one year later, Freddie Dizly, a friend of defendant, advised the police that he had information regarding Wilson's murder. Dizly claimed that after watching defendant and Ms. Wilson smoke cocaine, he saw defendant strangle Ms. Wilson. Shortly thereafter, the police picked up defendant for questioning. After waiving his *Miranda* rights, defendant gave the police a formal statement in which he admitted that he knew Wilson and other prostitutes in the area, but claimed that he had not seen Wilson on the day of her murder. Defendant also admitted that he always carried a "good knife and a good filet knife or ice pick." Based on defendant's formal statement and other evidence, the State charged defendant with Wilson's murder and two weapons offenses.

At trial, defense counsel sought to have defendant's blood drawn and typed for comparison with the Type A blood found beneath the victim's fingernails. The court ruled, however, that the results of any typing of defendant's blood would be inadmissible because even if typing revealed that defendant did not have Type A blood, that evidence would not be "clearly exculpatory" in light of the absence of any evidence of the victim's blood type. In other words, there would be no way to determine conclusively that the Type A blood found beneath the victim's fingernails had not come from the victim herself. Despite testimony by the State's expert during trial that the blood and fingernail clippings taken from the victim could be subjected to DNA testing, defendant did not request DNA testing at that time.

The jury convicted defendant of murder and the weapons offenses and the trial court sentenced defendant to thirty-five years imprisonment with a thirty-year term of parole ineligibility.

Defendant appealed his convictions and sentence. On appeal, defendant moved for a partial remand for the purpose of applying to the trial court for an order requiring the prosecutor to turn over forensic samples for DNA testing. Defendant's motion requested blood samples and fingernail clippings taken from the victim as well as a sample of the blood found beneath the victim's fingernails. In support of that request, defendant's attorney filed a certification that indicated that defendant had Type O blood, which eliminated the possibility that defendant was the source of the blood found beneath the victim's fingernails. Accordingly, if the DNA testing requested by defendant were to indicate that the victim was not the source of the blood found beneath her fingernails, it would establish conclusively that that blood belonged to a third party. That finding would suggest strongly that someone other than defendant was responsible for the murder and likely would lead to a new trial.

The Appellate Division issued an order denying that motion. Thereafter, pursuant to *Rule* 2:2–2, defendant moved for leave to file an interlocutory appeal to this Court. We granted defendant's motion. 172 *N.J.* 351, 798 *A.*2d 1266 (2002).

## II

A convicted person has the right to request DNA testing. *State v. Cann*, 342 *N.J.Super.* 93, 103, 775 *A.*2d 733 (App.Div.), *certif. denied*, 170 *N.J.* 208, 785 *A.*2d 437 (2001). In *Cann*, the Appellate Division stated that when "a defendant desires a DNA sample for testing purposes, even post-conviction, he must make an application to the trial court." *Ibid.* The appellate court reached that conclusion even though no law then in existence authorized such applications. The panel noted that:

> The absence of a rule authorizing the filing of a motion does not deprive a litigant of the right to make an application to the court. Indeed, *R.* 1:1–2 specifically provides that our rules "shall be construed to secure a just determination, simplicity in procedure, [and] fairness in administration. . . . In the absence of [a] rule, the court may proceed in any manner compatible with these purposes." Thus, the absence of a rule specifically authorizing a post-judgment motion seeking a

DNA analysis is not an impediment to making the application, and does not deprive the trial court of the right, in appropriate circumstances, to grant the relief requested. ·

[*Ibid.* (quoting *R.* 1:1–2).]

*Cann*, however, involved a PCR claim of ineffective assistance of counsel for failure to request DNA testing at trial and therefore did not address whether a post-judgment motion requesting samples for DNA analysis may be brought during a defendant's direct appeal or must wait to be heard during a PCR proceeding.

 The State argues that a limited remand for the purpose of allowing defendant to seek samples for DNA testing is improper because it would interfere with the State's · strong interest in preventing litigation from continuing indefinitely in a "disconnected and piecemeal fashion." *State v. Mitchell*, 126 *N.J.* 565, 584, 601 *A.*2d 198 (1992). From the State's perspective, defendant should be required to wait for PCR proceedings to request the DNA samples. A limited remand to the trial court pending an appeal is appropriate, however, when "consideration of a particular issue by the trial court will enable full resolution of the controversy by the appellate court or is necessary to deal with an essential matter implicating the issues on appeal arising after the notice of appeal is filed." Pressler, *Current N.J. Court Rules*, comment 1 on *R.* 2:9–1 (2003). Although "piecemeal" litigation generally is disfavored, a limited remand is appropriate because the results of defendant's motion for DNA testing may resolve his appeal. Moreover, important considerations of basic fairness outweigh the consequences of a delay in the appeals process arising from the grant of a limited remand.

We note first that allowing a remand for DNA testing on direct appeal likely would promote a more efficient resolution of the matter than would be achieved by requiring that such testing be delayed until PCR proceedings. If on remand the trial court denies defendant's motion, or if it allows the motion and the blood found beneath the fingernails of the victim matches the victim's DNA, the purpose for the remand will be accomplished and defendant's direct appeal will proceed apace. If the trial court

allows the testing, and the testing reveals that the blood found beneath the victim's fingernails does not match the victim's DNA, defendant likely would make a motion for a new trial under *Rule* 3:20–1. *See State v. Velez,* 329 *N.J.Super.* 128, 136, 746 *A.*2d 1073 (App.Div.2000). If defendant prevailed on his motion, there would then be no need to pursue either the direct appeal or any subsequent PCR petition. We therefore conclude that granting a limited remand during defendant's direct appeal avoids a needless expenditure of judicial resources.

Second, requiring defendant to wait until he files a PCR petition to request DNA samples for testing offends basic notions of fairness. Without the benefit of a remand, defendant will remain incarcerated for the duration of both his direct appeal and PCR application, proceedings that likely will consume years. It is the responsibility of our courts to "secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." *R.* 1:1–2. As the *Cann* court noted, "our rules are designed to accomplish substantial justice and so as to facilitate that quest they should not be construed to frustrate that goal." *Cann, supra,* 342 *N.J.Super.* at 103, 775 *A.*2d 733. It is patently unfair to compel an incarcerated defendant to wait perhaps years for access to potentially exculpatory evidence. Allowing a limited remand on direct appeal will mitigate that unfairness by affording defendant an opportunity to secure a new trial within months if warranted by the results of DNA testing.

■ Finally, we note that on remand, recently enacted *N.J.S.A.* 2A:84A–32a, entitled "Post-conviction DNA testing; motion; determinations," will apply. That statute permits "[a]ny person who was convicted of a crime and is currently serving a term of imprisonment" to make a motion for DNA testing. *N.J.S.A.* 2A:84A–32a(a). The State argues that *N.J.S.A.* 2A:84A–32a supports its contention that DNA testing for convicted persons should be restricted to formal PCR proceedings because the statute includes language referring to "post-conviction" DNA testing. We

disagree with that conclusion. Nothing in the plain language of that statute suggests that a defendant must wait until the resolution of a direct appeal before making an application under the statute. "Post-conviction" as used in the statute simply refers to the statute's broad application to "any person who was convicted of a crime and is currently serving a term of imprisonment." *N.J.S.A.* 2A:84A–32a(a). The statute is not confined in its application to those defendants advancing petitions for PCR.

### III

Concerns of basic fairness and the need to conserve judicial resources dictate that defendant should be granted an opportunity to seek samples for DNA testing during the pendency of his direct appeal. We therefore grant the motion for a limited remand for the purpose of allowing defendant to apply for the receipt of forensic samples from the State for such testing and comparison. Jurisdiction of the appeal shall otherwise remain with the Appellate Division.

Reversed and remanded.

*For reversal and remandment*—Chief Justice PORITZ and Justices COLEMAN, LONG, VERNIERO, LaVECCHIA, ZAZZALI and ALBIN—7.

*Opposed*—None.