**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0704-18T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JOHN A. JOHNS

     Defendant-Appellant.

_____

Submitted December 11, 2019 – Decided December 30, 2019

Before Judges Mayer and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 05-08-1618.

Joseph E. Krakora, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

Damon G. Tyner, Atlantic County Prosecutor, attorney for respondent (John Joseph Lafferty, IV, Assistant Prosecutor, of counsel and on the brief).

Appellant filed pro se supplemental briefs.

PER CURIAM

Defendant John Johns appeals from the July 24, 2018 order denying his petition for post-conviction relief (PCR).  We affirm.

We incorporate by reference the facts and procedural history outlined in our previous unpublished opinions in this matter, State v. Johns, A-2423-08 (App. Div. May 2, 2011) and State v. Johns, A-1200-11 (App. Div. Mar. 28, 2014).  We recite only certain facts from these opinions to lend context to the present appeal.

On August 2, 2005, an Atlantic County Grand Jury returned Indictment No. 05-08-1618 charging defendant and Basim K. Reid with numerous crimes arising from armed robberies which occurred at two different motels in Egg Harbor on April 24 and 25, 2005.  The indictment charged defendant and Reid with two counts of second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 (counts one and eight); four counts of first-degree robbery - two by use of force while armed, N.J.S.A. 2C:15-1(a)(1) (counts two and nine) - and two by causing fear of immediate bodily injury while armed, N.J.S.A. 2C:15-1 (counts three and ten); two counts of third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (counts four and eleven); two counts of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (counts five and twelve); one count of third-degree aggravated assault by attempting to or causing bodily injury with a deadly weapon,

2

N.J.S.A. 2C:12-1(b)(2) (count six); and two counts of fourth-degree aggravated assault for pointing a firearm, N.J.S.A. 2C:12-1(b)(4) (counts seven and thirteen).

Defendant was tried before a jury in May 2008 and found guilty on all charges except the conspiracy charge attributable to the April 24, 2005 robbery (count one). On July 18, 2008, the trial judge sentenced defendant to consecutive sixteen-year terms on the two robberies, for a total of thirty-two years, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Additionally, the judge sentenced defendant to consecutive five-year prison terms for aggravated assault, and two counts of possession of a handgun without a permit. On the remaining offenses, the trial judge either imposed concurrent terms or merged the convictions. The aggregate sentence was forty-seven years with a thirty-year parole ineligibility period. On June 25, 2009, defendant received an additional six-year sentence, subject to NERA, for a first-degree robbery conviction under Indictment 05-10-2297; that sentence was to run consecutive to the sentences in the present case.[1]

The first of the two robberies referenced in Indictment No. 05-08-1618 happened around 2:00 a.m. on April 24, 2005 at an Egg Harbor motel. The front desk clerk, R.B., was in the back office at the time defendant and Reid entered the

_____

[1] There is no indication in the record that defendant appealed from his conviction and sentence under Indictment 05-10-2297, nor does he raise issues pertaining to this separate indictment on the instant PCR appeal.

lobby. When R.B. saw defendant on the motel's security camera monitor, he came to the front and saw defendant standing behind the counter with a gun. Defendant ordered R.B. to his knees and began rifling through the cabinets and cash register. After finding little money in the cash register, defendant became aggravated and demanded money from R.B. Defendant took money from R.B.'s wallet and hit him on the side of his head with the gun he was wielding, causing R.B. to lose a tooth. Defendant and Reid fled with approximately $2100.

Defendant committed the second robbery around 3:30 a.m. on April 25, 2005 at another Egg Harbor motel. He first entered the motel at approximately 2:30 a.m. with a "large wad" of cash in his hands. He asked A.K., the front desk clerk, about room rates. However, when A.K. told defendant he had to produce identification, defendant declined to rent a room. Around an hour later, defendant returned to the motel and pointed a gun at A.K. as he ran toward the front desk. A.K. fell on the floor for his own protection. Defendant jumped over the desk and Reid joined him. Defendant demanded to know the location of the money on the premises, and A.K. gave him this information. Before defendant and Reid fled, they took about $380 from a cash drawer and safe.

At trial, R.B. identified defendant as one of the persons who robbed him. Although A.K. was unable to identify defendant as one of the robbers in the second

4

robbery, he identified defendant as the man who entered his motel at 2:30 a.m. Moreover, the State introduced surveillance tapes from both robberies, as well as defendant's tape-recorded confession to committing these robberies. The State also presented the testimony of two fingerprint experts who concluded that latent fingerprints found behind the counter of the motel where the first robbery occurred were defendant's fingerprints.

Defendant took the stand at trial and denied he committed either robbery. He also testified that his confession to the robberies was the product of police coercion. Further, he presented the testimony of his sister and two brothers to confirm he was with them in Atlantic City from 9:30 until around 11:30 on the nights of both Egg Harbor robberies. However, defendant's siblings could not vouch for his whereabouts around the time of the robberies.

Defendant appealed from his 2008 convictions and sentence. In May 2011, we affirmed his convictions, except for one conviction relating to possession of a handgun, and remanded the matter for reconsideration of the "consecutive sentences and the overall length of the defendant's sentence." Defendant's first resentencing occurred in July 2011, before a judge who was not the original sentencing judge. During that proceeding, defendant was given a prison term of twenty years for the April 24, 2005 robbery and a nineteen-year

A-0704-18T3

prison term for the April 25, 2005 robbery, with both terms subject to NERA. In March 2014, we again vacated defendant's sentence and remanded for the trial court to reconsider whether counts three and ten should be the subject of consecutive sentences and if so, what the appropriate length of sentence should be, limited to a period of sixteen years on each count. At the resentencing hearing in June 2014, the same judge who resentenced defendant in 2011 imposed consecutive terms of sixteen years for each robbery conviction, for an aggregate sentence of thirty-two years, subject to NERA. We affirmed this resentence by summary order on April 15, 2015.

Pursuant to the PCR judge's written opinion, defendant moved for PCR relief in September 2016, more than eight years after entry of the original judgment of conviction and more than five years after we affirmed defendant's convictions on his first direct appeal. His pro se certification in support of his PCR petition is dated September 2, 2017. When the PCR judge conducted oral argument on defendant's PCR petition, neither the State nor defense counsel addressed the untimely nature of defendant's petition under Rule 3:22-12(a)(1). Following oral argument, the PCR judge denied defendant's PCR petition on grounds unrelated to Rule 3:22-12(a)(1).

On appeal from the denial of PCR relief, defendant raises the following

argument through counsel:

> THIS MATTER MUST BE REMANDED FOR AN EVIDENTIARY HEARING BECAUSE DEFENDANT ESTABLISHED A PRIMA FACIE CASE OF TRIAL COUNSEL'S INEFFECTIVENESS FOR FAILING TO CHALLENGE HIS ILLEGAL ARREST WHICH RESULTED IN HIS CONFESSION.

In his supplemental pro se brief, defendant raises the following additional arguments:

> Point I
>
> This matter should be remanded for an [e]videntiary [h]earing, for [PCR] [j]udge erred in it[]s decision denying [d]efendant's petition. Defendant established a prima facie case of ineffective assistance of trial counsel, for failing to challenge the illegal arrest and the fruits of the poisonous tree claim.
>
> Point II
>
> [PCR judge] erred in denying the claim of ineffective assistance of counsel for [defendant's] claim regarding the [p]lea [n]egotiations.
>
> Point III
>
> [PCR judge] erred in denying [defendant's PCR] for the claim of ineffective assistance of trial counsel for not

objecting to the testimony of the AFIS[2] expert.

Point IV

[PCR judge] erred in denying [defendant's] claim of ineffective assistance of trial counsel for not asking the trial court for a lesser included offense.

Point V

[PCR judge] erred in denying [defendant's] claim of ineffective assistance of trial counsel for not objecting and filing for a Wade[3] hearing to challenge the in-court[] identification.

Because defendant filed his PCR petition in an untimely manner, we are persuaded he is not entitled to relief. Accordingly, we affirm the PCR judge's denial of same and add only the following brief comments.

Defendant does not present any facts permitting a late filing of his PCR petition under Rule 3:22-12(a)(1)(A). According to the PCR judge, his petition was not filed until September 2016, well past the five-year deadline following his 2008 judgment of conviction, and more than five years after we affirmed his conviction in May 2011. Such a lengthy delay increases the already substantial

---

[2] AFIS is the acronym for Automated Fingerprint Identification System, which is a biometric identification methodology that uses digital imaging technology to obtain, store, and analyze fingerprint data.

[3] United States v. Wade, 388 U.S. 218 (1967).

burden to show excusable neglect or that a fundamental injustice will result if the time bar is enforced.  See State v. Afanador, 151 N.J. 41, 52 (1997).

The prescribed five-year period "commences when the judgment of conviction is entered and is generally neither stayed nor tolled by an appellate or other proceeding."  State v. Murray, 162 N.J. 240, 249 (2000).  Indeed, it is well established that "a petition for [PCR] must be filed within five years of entry of the judgment memorializing the conviction even if further trial proceedings relating to the sentence are conducted during the interim period." State v. Dugan, 289 N.J. Super. 15, 20 (App. Div. 1996); see State v. Cann, 342 N.J. Super. 93, 102 (App. Div. 2001) (confirming that pursuant to Rule 3:22-12(a)(1)'s time-bar, "the date of the judgment of conviction controls even if there are subsequent sentencing proceedings.").

"[A] court should only relax the bar of Rule 3:22-12 under exceptional circumstances."  Afanador, 151 N.J. at 52.  A court may review a PCR petition filed more than five years after the date of the judgment of conviction in the narrow circumstance where the petition "alleges facts showing that the delay beyond said time was due to defendant's excusable neglect and that there is a reasonable probability that if the defendant's factual assertions were found to be true enforcement of the time bar would result in a fundamental injustice." R.

3:22-12(a)(1)(A). To satisfy the rule's requirements, "[t]he petition itself must allege the facts relied on to support the claim." State v. Mitchell, 126 N.J. 565, 577 (1992).

"Ignorance of the law and rules of court does not qualify as excusable neglect," State v. Merola, 365 N.J. Super. 203, 218 (Law Div. 2002) (citing Murray, 162 N.J. at 246), aff'd o.b., 365 N.J. Super. 82, 84 (App. Div. 2003), and an otherwise untimely PCR petition "is time-barred if it does not claim excusable neglect, or allege the facts relied on to support that claim," Cann, 342 N.J. Super. at 101-02 (citing Mitchell, 126 N.J. at 577).

Next, a fundamental injustice occurs "when the judicial system has denied a 'defendant with fair proceedings leading to a just outcome' or when 'inadvertent errors mistakenly impacted a determination of guilt or otherwise wrought a miscarriage of justice.'" State v. Nash, 212 N.J. 518, 546 (2013) (quoting Mitchell, 126 N.J. at 587). Thus, to satisfy the fundamental-injustice prong of the Rule 3:22-12(a)(1)(A) standard, a defendant "must make 'some showing' that an error or violation 'played a role in the determination of guilt.'" Id. at 547 (quoting State v. Laurick, 120 N.J. 1, 13 (1990)).

Defendant's submissions are bereft of any facts showing excusable neglect for the late filing of his petition. Likewise, he advances no facts to indicate a

fundamental injustice would occur if the time bar was enforced. In fact, defendant does not address the late filing of his petition in any manner.

As we are satisfied defendant's PCR petition is time barred, we need not address the ineffective assistance of counsel arguments he raises on appeal. We note, however, that even if defendant's PCR petition had been timely filed, or we were persuaded there was a basis to relax the bar of Rule 3:22-12, there is ample support in the record for the PCR judge's denial of defendant's petition for the separate but equally dispositive reasons set forth in her written opinion. Those reasons include her finding that some of defendant's appellate arguments are procedurally barred under Rule 3:22-4 and Rule 3:22-5, and that defendant failed to present a prima facie case of ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984).

Under Rule 3:22-4, a PCR claim is procedurally barred if it could have been raised on direct appeal. By contrast, Rule 3:22-5 provides that "[a] prior adjudication upon the merits of any ground for relief is conclusive."

As the PCR judge noted, defendant previously raised issues on appeal pertaining to his plea negotiation process, the need for a Wade hearing, and his concerns about AFIS expert testimony at trial. The PCR judge also found defendant failed to raise a claim on direct appeal regarding the omission of a

11

theft charge to the jury as a lesser included offense. The record supports the PCR judge's enforcement of these procedural bars.

Lastly, defendant argues the PCR judge erred in addressing the merits of his ineffective assistance of counsel claims. He emphasizes his trial attorney's performance was particularly deficient as counsel failed to challenge defendant's "illegal arrest" and failed to move to suppress his confession. We disagree.

The mere raising of a claim for PCR does not entitle the defendant to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Rather, trial courts should grant evidentiary hearings and make a determination on the merits only if the defendant has presented a prima facie claim of ineffective assistance, material issues of disputed facts lie outside the record, and resolution of the issues necessitates a hearing. R. 3:22-10(b); State v. Porter, 216 N.J. 343, 355 (2013). To establish a prima facie claim of ineffective assistance of counsel, the defendant must satisfy the two-pronged Strickland test as follows:

> First, [a defendant] must demonstrate that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." An attorney's representation is deficient when it "[falls] below an objective standard of reasonableness."

A-0704-18T3

Second, a defendant "must show that the deficient performance prejudiced the defense." A defendant will be prejudiced when counsel's errors are sufficiently serious to deny [defendant] a "fair trial." The prejudice standard is met if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." A "reasonable probability" simply means a "probability sufficient to undermine confidence in the outcome" of the proceeding.

[State v. O'Neil, 219 N.J. 598, 611 (2014) (alteration in original) (citations omitted) (quoting Strickland, 466 U.S. at 687-88, 694).]

"[I]n order to establish a prima facie claim, [the defendant] must do more than make bald assertions that he was denied the effective assistance of counsel. He must allege facts sufficient to demonstrate counsel's alleged substandard performance." Cummings, 321 N.J. Super. at 170. The defendant must establish, by a preponderance of the credible evidence, that he is entitled to the required relief. Nash, 212 N.J. at 541.

To the extent defendant belatedly argues his trial counsel was ineffective, we are not persuaded. For example, he asserts his trial attorney should have challenged his arrest and subsequent confession because no complaint warrant existed at the time of his arrest. However, probable cause sufficient to justify an arrest without a warrant exists when police have certain information which reasonably leads them to believe that a crime has been or is being committed by

the person arrested. Beck v. Ohio, 379 U.S. 89, 91 (1964); State v. Doyle, 42 N.J. 334, 346 (1964); see also State v. Cook, 47 N.J. 402, 414 (1966) and State v. Fariello, 71 N.J. 552, 568 (1976).

Defendant's own submissions indicate law enforcement from both Atlantic City and Egg Harbor Township were working together to develop possible suspect information for the series of armed robberies that occurred in various establishments in the area. Police had surveillance coverage from several robberies, and eventually were led to the home of defendant's aunt, where defendant was present. Defendant provides no evidence to demonstrate law enforcement unlawfully entered his aunt's residence or that his aunt did not provide consent to allow police to enter her home and effectuate defendant's arrest. Without a valid basis to challenge the legality of his arrest, defendant's trial counsel was not ineffective for failing to pursue a meritless motion.

Additionally, even if defendant's confession had been suppressed, we are convinced the PCR judge properly found he could not satisfy the Strickland prejudice prong because of the overwhelming evidence against him. As the trial judge noted in defendant's 2008 judgment of conviction, the State had surveillance video placing defendant at the scene of at least one of the robberies, and a video of defendant outside the second motel, with his cohort, Reid. The

14

State also had fingerprint evidence and victim statements pointing to defendant's guilt. Further, Reid pled guilty to both Egg Harbor robberies. According to the State, Reid inculpated defendant in those robberies.

We review the legal conclusions of a PCR court de novo. State v. Harris, 181 N.J. 391, 419 (2004). The de novo standard of review applies to mixed questions of fact and law. Id. at 420. Where an evidentiary hearing has not been held, it is within our authority "to conduct a de novo review of both the factual findings and legal conclusions of the PCR court." Id. at 421. As defendant failed to demonstrate his trial attorney's handling of his matter was deficient and that he was prejudiced by his attorney's deficient performance, we are satisfied the PCR judge properly found defendant did not satisfy the two-prong Strickland test and he was not entitled to an evidentiary hearing.

Any arguments asserted by defendant that we have not addressed are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0704-18T3