**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3201-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

PATRICK F. ALLEN,

     Defendant-Appellant.

_____

Submitted March 22, 2021 – Decided April 22, 2021

Before Judges Fasciale and Rothstadt.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 13-01-0043.

Joseph E. Krakora, Public Defender, attorney for appellant (Andrew R. Burroughs, Designated Counsel, on the briefs).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Carey J. Huff, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Patrick Allen appeals from a March 13, 2020 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

Defendant was convicted by a jury of murder and other charges related to the killing of his wife, K.A.,[1] after a domestic argument over finances. The trial court sentenced him to thirty years subject to a thirty-year period of parole ineligibility.

Defendant appealed, arguing that the trial court erred by not addressing improprieties during jury selection, improperly admitting the State's experts' testimonies, allowing prejudicial testimony from law enforcement officers, failing to investigate claims of juror bias, and failing to properly instruct the jury as to a certain issue. In an unpublished opinion, we affirmed defendant's conviction. See State v. Allen, A-3576-14 (App. Div. Apr. 5, 2018). The Supreme Court denied defendant's petition for certification. State v. Allen, 235 N.J. 461 (2018).

---

[1] Out of respect for the privacy of the victim and related parties, this court uses initials in its decision when referring to the victim. R. 1:38-3(c)(12).

A-3201-19

In our earlier opinion, we set forth the facts leading to defendant's arrest and conviction. Allen, slip op. at 2-4. We need not repeat them here.

In December 2018, defendant filed his petition for PCR, arguing that trial counsel (1) failed to call defendant's expert witnesses "on Collection and Processing of Forensic Evidence" or pay defendant's private investigator and "operated under a conflict of interest" when he "pressured" defendant's family for additional money before he would do so; (2) failed to "follow-up" with witnesses; (3) failed to file an interlocutory appeal; (4) failed to investigate evidence of an ATM receipt and cash that he had spent the day of the murder; and (5) that trial counsel did not investigate the fact that defendant's vehicle had a full tank of gas at the time of his arrest.

The focus of defendant's petition was that he received ineffective assistance of counsel (IAC) based upon circumstances relating to his relationship with trial counsel, which were not part of the trial record. Specifically, defendant asserted that he had paid trial counsel a substantial sum "for legal services that included expert witnesses" but that trial counsel demanded mid-trial that defendant provide additional funds in order to secure the experts' appearances in court. He argued that trial counsel rendered IAC because he should have applied the last of the payments defendant had been

making throughout the course of counsel's representation to fund the experts' appearances at trial but that, instead, trial counsel applied this last payment to counsel's legal fees. Consequently, defendant argues that necessary experts did not appear on his behalf due to counsel's decision regarding allocation of funds.

Defendant provided documents that allegedly substantiated his claims. They included a handwritten note trial counsel handed him during the trial that stated counsel would need additional funds to secure the experts' appearances, a certification that demonstrated that he had already paid trial counsel $172,941.84 in legal fees but which did not specify how those fees were allocated, and counsel's November 5, 2014 email to defendant's family expressing that the experts' services were necessary and requesting the family supply the funds needed to secure their appearances.

The PCR judge heard oral argument on defendant's petition on February 12, 2020, and on March 13, 2020, he issued an order denying defendant's petition without an evidentiary hearing. In a written decision accompanying his order, the PCR judge determined that defendant's challenges to the cleaning of the crime scene, the resulting alleged loss of evidence, and his entitlement to an adverse inference charge had already been ruled on by the trial court and could have been argued on direct appeal, and these claims were therefore procedurally

A-3201-19

barred by <u>Rule</u> 3:22-4. He also found that, as to the merits of defendant's lost evidence claim, the trial court had ruled that defendant failed to show that he was prejudiced by the police's cleaning of the crime scene, that any particular exculpatory evidence had been destroyed, or that any material exculpatory evidence had been lost.

The PCR judge then found that defendant's arguments regarding witness testimony were procedurally barred under <u>Rule</u> 3:22-4 because they could have been raised on direct appeal, noting that the Appellate Division had already considered testimony-based claims on direct appeal and that defendant had not raised a cumulative error argument. The judge then concluded that none of the exceptions to <u>Rule</u> 3:22-4's procedural bar applied.

The PCR judge continued to find that defendant's claims were additionally barred by <u>Rule</u> 3:22-5 because there had already been a "prior adjudication upon the merits" of his testimonial and spoliation claims. He explained that the Appellate Division had already ruled on defendant's claims that he was prejudiced by the admission of some State witnesses' testimony on direct appeal.

The judge also concluded that, as to defendant's claims regarding the spoliation of evidence in connection with the cleaning of the crime scene, the trial court had already ruled on the substance of these claims, and since the

A-3201-19

Appellate Division had already reviewed defendant's testimonial claims, the PCR judge was bound by the court's ruling to "defer to the trial court's ruling as law of the case."

Finally, the PCR judge concluded that, as to defendant's claim that his trial counsel failed to remit funds necessary to secure expert witnesses' appearances at trial, defendant had failed to establish a prima facie claim for PCR, finding that defendant had not demonstrated that he was prejudiced by the experts' absence and noting that "[t]here is no per se rule that requires trial attorneys to seek out an expert."  Accordingly, the PCR judge denied defendant's petition without granting an evidentiary hearing.  This appeal followed.

On appeal, defendant argues the following:

> I. AS DEFENDANT PRESENTED A PRIMA FACIE CASE OF [IAC] AND THERE WERE GENUINE ISSUES OF MATERIAL FACT IN DISPUTE, THE PCR COURT ERRED WHEN IT DENIED HIS PETITION WITHOUT FIRST HOLDING AN EVIDENTIARY HEARING.
>
> > A. Defendant's claims are not procedurally barred.
> >
> > B. Defendant is entitled to an evidentiary hearing.

6

In a pro-se supplemental brief, defendant reiterates the arguments raised in his merits brief, without adherence to Rule 2:6-2(a)(1) or (6) (requiring the division of legal arguments into identified point headings).  In this submission, defendant essentially contends that had investigators been hired, they could have looked at items found at the crime scene, such as a wool hat that did not have his or his family's DNA on it, which could have supported a third-party guilt defense, or the murder weapon—a frying pan—that he stated had only traces of blood evidence.  Also, the investigators could have produced more photographs than did the State's investigators.

We are not persuaded by any of defendant's contentions, except, as noted below, his argument that all his claims were not procedurally barred.

Where an evidentiary hearing has not been held, we "conduct a de novo review of both the factual findings and legal conclusions of the PCR court." State v. Harris, 181 N.J. 391, 419 (2004); see also State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016).

At the outset, we conclude that the PCR judge erred to the extent he determined that all of defendant's claims were procedurally barred under Rule 3:22-4 and Rule 3:22-5.  However, having said that, because we agree with the

PCR judge's conclusion as to the merits of defendant's claims, we need not dwell on the error arising from the determination that all of the claims were barred.

Suffice it to say that defendant's claims that related to his alleged dispute with his trial attorney over money were not part of the record in this matter, making the claims "particularly suited for" PCR. State v. Preciose, 129 N.J. 451, 460 (1992). They would therefore have been inappropriate for consideration on direct appeal. See Preciose, 129 N.J. at 461; see also State v. Walker, 80 N.J. 187, 194 (1979) (holding, where the facts supporting a claim that trial counsel failed to call an alibi witness were not in the trial record, the claim should be raised in a petition for PCR, not on direct appeal). Moreover, comparing defendant's claims on PCR about his dispute with his attorney to those raised on direct appeal, we disagree that they were "either identical or substantially equivalent." State v. Marshall, 173 N.J. 343, 351 (2002), and therefore were not barred under Rule 3:22-5.

Turning to the merits of defendant's claims on PCR, we conclude that the PCR judge correctly determined that defendant failed to demonstrate a prima facie claim for IAC that warranted an evidentiary hearing. "The standard for an [IAC] claim is . . . the same under both the United States and New Jersey Constitutions." State v. Gideon, 244 N.J. 538, 550 (2021). To establish a

violation of the right to the effective assistance of counsel, a defendant must meet the two-part test articulated in Strickland v. Washington, 466 U.S. 668, 694 (1984), and adopted in State v. Fritz, 105 N.J. 42 (1987). Gideon, 244 N.J. at 550. "A prima facie [claim] is established when a defendant demonstrates 'a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.'" State v. Porter, 216 N.J. 343, 356 (2013) (quoting R. 3:22-10(b)).

Under the first prong of the Strickland test, a defendant must show that his attorney made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. Counsel's performance is deficient if it "[falls] below an objective standard of reasonableness." Id. at 688.

Under the second prong, a defendant must show that counsel's "deficient performance prejudiced the defense," id. at 687, because "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the trial. Ibid. This prong is "far more difficult" to meet, and except in certain "egregious" circumstances, prejudice must be proven, not presumed. Preciose, 129 N.J. at

463-64; <u>Fritz</u>, 105 N.J. at 52, 61.  When determining whether a defendant has shown prejudice, the court should consider the strength of the State's evidence. <u>See</u> <u>Gideon</u>, 244 N.J. at 556; <u>State v. Pierre</u>, 223 N.J. 560, 583 (2015) ("Important to the prejudice analysis is the strength of the evidence that was before the fact-finder at trial.").

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."  <u>Strickland</u>, 466 U.S. at 697; <u>State v. Marshall</u>, 148 N.J. 89, 261 (1997).  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

Here, even assuming that defendant established that trial counsel's performance was constitutionally deficient, he did not demonstrate that there was a "reasonable probability" the outcome of the trial would have differed had his experts testified.  One expert, Dean Beers, a criminal defense investigator, issued a report in which he concluded that a third-person assailant could not be ruled out because much of the forensic evidence collected by police was not tested and there was insufficient evidence to establish what, if any, weapon was used by K.A.'s assailant.  These conclusions—premised upon a lack of testing—

10

are insufficient to establish a "reasonable probability" that the outcome of the case would have differed. As we have recognized, "a convicted defendant who does not have the results of a DNA test can never establish a reasonable probability that the result of the proceeding would have been different if DNA testing had been performed." State v. Cann, 342 N.J. Super. 93, 102-03 (App. Div. 2001).

Beers's conclusion that there was insufficient evidence to determine the instrumentality of K.A.'s death similarly falls short. Notably, this conclusion is in stark contrast to the State's position—supported by a wealth of testimony and physical evidence—that K.A.'s assailant used the nearby frying pan as a weapon. Beers's report, despite concluding that there was "insufficient evidence . . . to determine the instrument(s)" used by K.A.'s assailant, provides no basis for his conclusion, and specifically does nothing to rebut the State's witnesses' detailed testimony explaining the relation between K.A.'s injuries and the frying pan.

As to the other expert, Linda Reed, a crime scene investigator, defendant argues that if trial counsel had called Reed to the stand, her testimony may have entitled him to an adverse inference instruction based on the State's handling of the crime scene. We disagree.

In determining whether an adverse inference for spoliation of evidence is warranted, a court must consider "(1) the bad faith or connivance by the government; (2) whether the evidence was sufficiently material to the defense; and (3) whether the defendant was prejudiced." George v. City of Newark, 384 N.J. Super. 232, 243 (App. Div. 2006) (quoting State v. Dreher, 302 N.J. Super. 408, 483 (App. Div. 1997)). "Without bad faith on the part of the State, 'failure to preserve potentially useful evidence does not constitute a denial of due process of law.'" Ibid. (quoting Arizona v. Youngblood, 488 U.S. 51, 57 (1988)). If the defendant has not made a showing of bad faith, "relief should be granted only where there is a 'showing of manifest prejudice or harm' arising from the failure to preserve evidence." Ibid. (quoting Dreher, 302 N.J. Super. at 489).

Defendant did not demonstrate that the State acted in bad faith. Moreover, nowhere in Reed's report does she indicate what evidence may have been missing from the crime scene upon inspection, or how the absence of that evidence may have prejudiced defendant's case. Accordingly, defendant has not demonstrated that he was prejudiced by trial counsel's failure to call either expert, particularly given the "strength of the evidence" produced by the State. Pierre, 223 N.J. at 583.

A-3201-19

Similarly, defendant failed to establish that he was prejudiced by trial counsel's alleged failure to hire an investigator to look into an ATM receipt, the amount of cash he had on him at the time of his arrest, the "full" tank of gas in his car, or to look into a "black wool Army [h]at" found in his garbage—all of which he asserts would have corroborated his story.

"[W]hen a petitioner claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Porter, 216 N.J. at 355 (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999)); R. 1:6-6. Defendant provided no support for his contentions about what the investigation would have revealed other than his "bald assertions." Cummings, 321 N.J. Super. at 170.

In any event, the evidence adduced at trial established that the police investigating the scene searched defendant's person, his house, his vehicle, and the surrounding areas and were unable to find any receipt for gas. Surveillance footage covering all but a small portion of the lot in which defendant allegedly parked to "cool off" did not show defendant's car in the lot at any point after 9:13 a.m. Additionally, defendant's assertion that he withdrew $100 from the

ATM and spent $60 on gasoline was unsupported by the fact that defendant was found with approximately $96 remaining on his person following his $100 ATM withdrawal earlier that morning.

Similarly without any support was defendant's argument that he was prejudiced by trial counsel's failure to have an investigator look into a "black wool Army [h]at" found in a garbage can. Defendant argues that the hat did not contain his DNA or that of his family members, which he claims established a reasonable doubt as to whether an unidentified third party was on his property the day of the murder. However, Beers's report stated that no DNA tests were ever performed on the hat. Without those tests and corroborating results, defendant did not establish "a reasonable probability that the result of the proceeding would have been different" based upon DNA evidence that he does not have. Cann, 342 N.J. Super. at 102-03.

Because we conclude that, "view[ing] the facts in the light most favorable to" defendant, Preciose, 129 N.J. at 463, the PCR judge correctly determined that defendant did not make a prima facie showing of IAC, we also conclude the judge correctly denied defendant's request for an evidentiary hearing. See R. 3:22-10(b); Porter, 216 N.J. at 355.

14

Finally, to the extent not expressly addressed, we determine the balance of defendant's arguments are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-3201-19